UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA RING,

    Plaintiff,                                   Case No.

vs.

BOCA CIEGA YACHT CLUB, INC.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, SAMANTHA RING, and sues Defendant, BOCA CIEGA YACHT CLUB, INC., and alleges as follows:

**JURISDICTION & VENUE**

1. This is a civil action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA").

2. This Court has jurisdiction pursuant to the following statutes:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, and/or treaties of the United States;

      b.    28 U.S.C. § 1343(3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

      c.    28 U.S.C. § 2201 and 2202 and Rule 65 of Federal Rules of Civil Procedure for claims for declaratory and injunctive relief;

3.    Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) as the events that give rise to this cause of action arose in this District.

## PARTIES

4.    Plaintiff SAMANTHA RING ("RING") is a resident of St. Petersberg, Florida. RING is highly allergic to bee stings and also suffers severe anxiety with panic attacks. RING is an individual with a disability under 42 U.S.C. §12102(a) and 28 CFR § 36.104 because her physical and/or mental impairments substantially limit one or more of her major life activities.

5.    Defendant BOCA CIEGA YACHT CLUB, INC. ("BCYC" or "DEFENDANT") is a Florida Not For Profit Corporation which operates a marina located at 4600 Tifton Dr. South, Gulfport, Florida 33711.

## FACTUAL ALLEGATIONS

6.    RING, an avid sailor, has been a member of BCYC since 2007.

7. In August of 2015, RING obtained a dog named "Piper." Piper is a border collie mix and has been individually trained to do work and perform tasks for the benefit of RING and which assist RING with her specific disabilities.

8. Piper is a "service animal" under the ADA and 28 CFR § 36.104.

9. As a result of her disability, RING requires Piper's presence to assist her in outdoor or exposed venues.

10. Piper warns RING of the presence of bees and catches and kills bees if they get close to RING.

11. Additionally, Piper seeks help if RING is unable to use her "EpiPen"[1] during an allergy attack or other incapacitation triggered by RING's disability. Piper also anticipates oncoming panic attacks and interrupts anxiety-related behaviors so that the panic attacks do not escalate.

12. In addition to being trained to perform disability-related tasks, Piper has earned the Canine Good Citizen title from the American Kennel Club.

13. BCYC is aware that Piper is a service animal that provides disability related assistance to RING and that RING wishes to be able to be accompanied by Piper when RING visits the BCYC clubhouse.

---

[1] The EpiPen is medication and a medication administration device used in emergencies to quickly treat very serious allergic reactions to insect stings/bites, foods, drugs, and other substances. One of its active ingredients is epinephrine which acts quickly to improve breathing, stimulate the heart, raise a dropping blood pressure, reverse hives, and reduce swelling of the face, lips, and throat..

3

14. BCYC steadfastly refuses to allow RING to be accompanied by Piper when RING goes to the BCYC clubhouse.

15. On July 16, 2018 RING provided medical documentation of her disability-related need to be accompanied by Piper to BCYC Commodore Larry Brown. (The 07/15/2018 "Service Animal/Medical Need Letter" from Andres Santayana, M.D., is attached, marked, and incorporated herein as "Exhibit A.")

16. Neither Commodore Larry Brown or any other agent of BCYC has requested additional information regarding RING's disability or the assistance PIPER provides to RING.

17. Instead of ceasing its discriminatory actions, BCYC informed RING that BCYC is exempt from the ADA because it is a "private club" and is therefore free to exclude service animals from its leased premises. (*See generally* 12/23/2018 "Written Reprimand & Private Club is a Free Pass" Letter, marked, attached, and incorporated herein as "Exhibit B.")

18. BCYC is not a "private club" for purposes of being exempt from the ADA because, *inter alia*, BCYC is not selective regarding its members, charges minimal dues compared to organizations that have been found to be exempt, and actively recruits new members.

19. BCYC is a place of public accommodation whose operations affect commerce and fall within at least one of the designated categories concerning facilities operated by private entities under the ADA and 28 CFR § 36.104.

20. BCYC is subject to the mandates of Title III (the ADA) as a place of public accommodation.

21. BCYC is open to the public for scouting events, regattas, sailing programs for adults and youth, art shows, book signings, lectures, and other events more than half the year.

22. Non-members are regularly permitted access to BCYC facilities.

23. BCYC does not exercise genuine selectivity in the admission of its members and its standards or criteria for admission are minimal. There is no cap on the number of members that may be admitted nor any criteria that must be met by prospective members.

24. Over 99% of people who apply to be members in the BCYC are admitted.

25. BCYC actively recruits and solicits new members from the general public through advertisements and social media. Anyone can obtain a membership application by entering an email address. BCYC does not control which members of the public are able to access membership applications or restrict membership to persons invited to apply.

26.     The first page of BCYC's website[2] states:

> *Located on beautiful Boca Ciega Bay in Gulfport, Boca Ciega Yacht Club (BCYC) is only four miles from the open waters of the Gulf of Mexico offering sailors easy access to west Florida's best cruising destinations as well as fabulous sailing on the protected waters of the Bay. BCYC members enjoy club cruising, racing and a full social calendar throughout the year. If you are not already a Member, we invite you to discover the many **benefits of membership** and join the most exciting and friendly sail club in Florida.*

27.     The phrase "benefits of membership" is a hyperlink. Clicking on it takes visitors to a page[3] emphasizing BCYC's inclusiveness:

> *Everyone interested in sail boating, sailboat racing, or social activities and willing to help maintain our Club can be a member of BCYC. Contact our Membership Chairman Gerri Angel with any questions. Dues are surprisingly reasonable, and we are always ready to welcome new members.*

28.     BCYC's membership fees are non-substantial. BCYC charges a membership fee of $145.00 per quarter (which the BCYC website notes is "*Just $1.59 per day.*")  Any member of the public that attends BCYC's Adult Sail School program is automatically given a free 3-month membership in BCYC.

29.     BCYC is located on land leased from the City of Gulfport for $1.00/year.

---

[2] http://www.sailbcyc.org/ Visited March 29, 2019 (emphasis in the original).

[3] http://www.sailbcyc.org/becomemember/ Visited March 29, 2019.

6

30. BCYC's purpose is primarily social, known for "throw[ing] a party or two (or ten),[4] like [its] monthly potlucks," with sailing as a backdrop to its "rhumb-loving roots." *See id.*

31. BCYC procedures for evaluating new members are informal and non-selective.

32. On December 23, 2018, RING received a written reprimand from BCYC Commodore Larry Brown for being in the clubhouse with Piper. See Exhibit B.

33. Because BCYC refused to allow her the same access to the clubhouse as non-disabled members, even after RING provided medical verification of her disability, RING filed an administrative complaint with the Pinellas County Office of Human Rights.

34. BCYC received a copy of RING's administrative complaint from the Pinellas County Office of Human Rights on January 15, 2019. RING immediately began experiencing retaliation by BCYC for having initiated the complaint. BCYC's retaliatory conduct includes:

a) Altering the minutes of BCYC's December 2018 meeting after learning of the discrimination complaint to reflect alleged complaints BCYC claimed to have

---

[4] http://www.sailbcyc.org/ Visited March 29, 2019 (emphasis in the original).

7

received regarding Piper. RING had never been informed of any complaints regarding Piper.

b) Fining RING $150.00 for having her service dog in the clubhouse on January 22, 2019. (01/22/2019 "Notice of Fine" is marked, attached, and incorporated herein as "Exhibit C.")

c) Targeting RING with a motion for suspension of her membership, while refusing to inform RING of the basis for the motion. (*See generally* Commodore Angel's Emergency Motion for Suspension which is marked, attached, and incorporated herein as "Exhibit D.")

d) Suspending RING from BCYC on March 14, 2019 for reasons that were wholly pretextual. The litany of her alleged infractions includes fraudulently claiming to be a City resident to get a cheaper rate for renting a slip, stealing electricity, dumping into the Bay and talking to the City Manager of the City of Gulfport regarding the problems RING was having with access to BCYC with her service dog.

e) Refusing to allow RING to bring her service dog to the meeting at which her suspension was discussed.

f) Targeting RING with expulsion from BCYC. (3/19/2019 Expulsion Target Letter is marked, attached, and incorporated herein as "Exhibit E.")

35. In this action RING seeks an injunction to protect the rights of disabled persons, including RING, to be accompanied by a service dog.

36. RING has retained the undersigned to represent her in this cause and seeks an award of attorney's fees and costs for bringing this matter.

## COUNT I
## FAILURE TO MAKE REASONABLE MODIFICATIONS

37. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 36 as if fully set forth herein.

38. Pursuant to 42 USC § 12182, Title III,§ 302:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

39. Among the specific prohibitions against discrimination included in the ADA is "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. §12182(b)(2)(A)(ii); 28 C.F.R. §36.302(a).

40. Accommodating service animals in locations where pets are prohibited is a specific example of the type of modification required by the ADA.

41. BCYC is a place of public accommodation and is therefore required under the ADA to provide RING with a reasonable accommodation in order to permit her access to and use of its facilities.

42. BCYC knows of RING's disabilities and her need to be accompanied by her service dog in the clubhouse.

43. A service animal is a working animal, not a "pet."

44. BCYC's refusal to allow RING to access the BCYC clubhouse with her service dog denies RING the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of Title III, § 302 of the ADA, 42 USC § 12182.

45. BCYC's refusal to allow RING to attend BCYC's meetings (about her) with her service dog denies RING the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of BCYC's premises, in violation of Title III, § 302 of the ADA, 42 USC § 12182.

46. BCYC's targeting, fining, suspending and threatening to expel RING for pretextual reasons further denies RING the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of BCYC's membership, in violation of Title III, § 302 of the ADA, 42 USC § 12182.

47. RING is being subject to discrimination on the basis of her disability.

48. BCYC's discrimination against RING is intentional, BCYC has refused RING full and equal access to the clubhouse having full knowledge that RING is a disabled individual and that Piper is her service dog.

49. BCYC apparently does not assert that allowing persons with disabilities to be accompanied by service dogs in the clubhouse would fundamentally alter BCYC's operations or impose undue administrative or financial burdens, but rather BCYC claims that it is free to exclude service animals with impunity because it is a "private club" and therefore exempt from the ADA. See Exhibit B.

50. BCYC does not qualify for the "private club" exemption to the ADA.

WHEREFORE, Plaintiff requests that this honorable Court:

A. Enter judgment in her favor against the Defendant;

B. Issue a declaration stating that Defendant violated Plaintiff's rights under Title III of the Americans with Disabilities Act and that Plaintiff substantially prevailed in this lawsuit;

C. Enter an order enjoining/restraining Defendant from further acts of discrimination including, but not limited to, excluding persons with disabilities accompanied by service dogs from any portion of its premises, including the clubhouse;

D. Enter an order placing Plaintiff in the position she would have been in had there been no violation of her rights;

E.  Award attorneys' fees and costs associated with enforcing the Americans with Disabilities Act; and

F.  Grant any other relief this Court deems appropriate.

## COUNT II
## RETALIATION

51. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 through 46 as if fully set forth herein.

52. It is a violation of the ADA to retaliate against a person because the person filed a complaint to enforce the ADA. 42 U.S.C. §12203; 28 C.F.R. §36.206 (c)(4).

53. RING filed a complaint with the Pinellas County Office of Human Rights regarding BCYC's refusal to allow her to bring her service dog to BCYC's clubhouse.

54. After BCYC was notified by Pinellas County of RING's disability discrimination complaint, RING was immediately subject to adverse actions by BCYC including being fined, suspended, and targeted for expulsion based upon pretextual reasons.

55. The adverse actions against RING were taken in retaliation for RING having filed an administrative complaint.

WHEREFORE, Plaintiff demands judgment against BCYC for attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

## COUNT III
## THIS COURT'S POWER TO GRANT RELIEF

56. Plaintiff re-alleges and incorporates each of the above paragraphs numbered 1 though 55, as if fully set forth herein.

57. The Plaintiff has suffered and incurred irreparable damage, and continues to suffer and incur irreparable damage.

58. The ADA and Rule 65 of the Federal Rules of Civil Procedure, collectively and singularly, empower this Court to grant a temporary restraining order, preliminary injunctive and permanent injunctive relief, and/or such other relief as the Court may deem appropriate to hold and redress the violations of any provision of law enforced by the ADA. The Court, in the exercise of its equitable jurisdiction may award accommodation directives, policy modification, and restoration of access privileges to prevent and remedy any violation of any provision of law enforced by the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Enter judgment declaring that the discriminatory practices of BCYC violate the ADA;

b) Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining and prohibiting Defendant, including but not limited to

its Members, future Members, staff, employees, volunteers, invitees, agents, attorneys, and representatives, from blocking, preventing, precluding, inhibiting, and otherwise denying Plaintiff access, entry, use, transport, travel, movement, peace, and presence at BCYC -- with or without her service dog -- such actions to include immediate re-activation of the Plaintiff's membership in BCYC, dismissal of all fines against her, and unfettered access to all parts of BCYC's premises as afforded to any other member, including but not limited to its clubhouse;

c)   Enter a permanent injunction enjoining and prohibiting BCYC from discriminating against any person based upon handicap by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap an equal right to the access and/or use of BCYC's premises;

d)   Requiring BCYC to notify and distribute, in writing to each and every club member, a legal statement enumerating the rights of the disabled under the ADA with respect to, among other things, service animals;

e)   Awarding to Plaintiff her attorney's fees and costs incurred in bringing this action to enforce the ADA;

f)   Awarding to Plaintiff her attorneys' fees and costs incurred in bringing this action to protect her right to be free from retaliation; and

g)   Granting such other relief as justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all issues so triable.

Dated: March 29th, 2019                                                              Respectfully submitted,

MARCY I. LAHART, P.A.                                              VENZA LAW, PLLC
207 SE Tuscawilla Road                                                931 Village Boulevard, #905-322
Micanopy, FL 32667                                                      West Palm Beach, FL 33409
Telephone: (352) 545-7001                                          office: (561) 596-6329
Facsimile:  (888) 400-1464                                          email: dvenza@venzalawpllc.com
marcy@floridaanimallawyer.com

BY: *s/ Marcy I. LaHart*                                                 BY: *s/Denese Venza*
Marcy I. LaHart, Esq.                                                    Denese Venza, Esq.
Florida Bar No. 0967009                                              Florida Bar No. 599220
*Counsel for Plaintiffs*                                                    *Counsel for Plaintiffs*