UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SAMANTHA RING,

                    Plaintiff,                    Case No. 8:19-cv-00772-VCM-JSS

vs.


BOCA CIEGA YACHT CLUB, INC.,

                    Defendant.

_____/

### PLAINTIFF'S MOTION TO QUASH SUBPOENAS TO NON-PARTIES, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

Plaintiff SAMANTHA RING ("Plaintiff" and/or "RING"), by and through undersigned counsel and pursuant to Rules 45(d)(3), 26(b)(2)(C)(iii), and 26(c) of the Federal Rules of Civil Procedure and Rule 3.04 of the Local Rules of the U.S. District Court for the Middle District of Florida, moves for entry of an order quashing *in toto* or otherwise modifying Defendant BOCA CIEGA YACHT CLUB, INC.'s ("Defendant" and/or "BCYC") thirteen (13) proposed subpoenas duces tecum directed to employers, mental health care providers, and general health care providers and states in support:

### Summary of Motion

This case arises from a non-profit organization's refusal to comply with the Americans with Disability Act ("ADA") and grant a service animal's presence on the organization's property, as well as its retaliation when its non-compliance and discrimination were challenged with the local government office.

The non-profit has issued and proposes to serve thirteen scorch-the-earth subpoenas which evidence not only a retaliatory mindset, but the organization's fundamental lack of understanding of the nature of the Plaintiff's disability and the ADA's application to it.

Plaintiff moves to quash, *in toto*, seven (7) of the thirteen (13) subpoenas, and to modify the remaining six (6).[1] Although some modification to the subpoenas' scope has been negotiated between the parties' counsel, counsel has reached an impasse.

## I.   PERTINENT FACTS, CRITICAL ADA APPLICATION, AND PROCEDURAL BACKGROUND

RING has been a member of the BCYC for more than a decade. Answer to Complaint [DE 12] ("Answer") at ¶6. RING has severe allergies, including a life-threatening anaphylactic allergy to insect stings, the fear of which contribute greatly to her panic attacks and severe anxiety disorder, and all of which render her "disabled" within the meaning of the ADA. First Amended Complaint and Demand for Jury Trial [DE 26] ("First AC") at ¶8.

In the summer of 2015, she obtained a service animal, a border-collie mix named "Piper," to, *inter alia*, warn her of the presence of life-threatening allergens such as bees, eliminate the threat (Piper catches and kill bees if they get too close to RING), thusly alleviating her anxiety. *Id.* ¶¶9 through 13. Given the nature of RING's disability, Piper's services are not needed in every environment she encounters, at her side 24-7, nor for every one of her major life activities. Critical to the subpoena challenge *sub judice* is that, as a matter of law, needing a service animal in only specific environments or for particular life activities does not strip one of disability status under the ADA. 42 U.S.C. § 12102(4)(C) ("[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.")

---

[1] As Defendant has agreed to withdraw subpoenas directed only to "Billing Records Custodians," as explained *infra*, two of the thirteen are technically no longer at issue.

BCYC hosts activities and events, including sailing and other outdoor events, on a marina it leases from the City of Gulfport. Answer ¶8. BCYC steadfastly refuses to allow RING to be accompanied by Piper when RING goes to the BCYC clubhouse. *Id.* at ¶14. RING was reprimanded and fined for being accompanied by her service dog inside BCYC's clubhouse. First AC at ¶¶40, 45, and 48. When her efforts to convince BCYC to comply with the ADA and allow Piper at all times when she is at BCYC were for naught, RING sought assistance from BCYC's landlord, the City of Gulfport. *Id.* at ¶42. RING also filed an administrative complaint with the Pinellas County Office of Human Rights ("PCOHR") on January 2, 2019, after which BCYC immediately put the wheels in motion to expel RING from the BCYC in retaliation for RING having spoken to city officials and having filed the administrative complaint. *Id.* at ¶41.

On March 29, 2019, Plaintiff filed her Complaint and Demand for Jury Trial (DE 1).

On April 19, 2019, BCYC's expulsion efforts came to fruition when RING was expelled from the BCYC for wholly pretextual reasons. *Id.* at ¶48.

On June 5, 2019, the PCOHR informed BCYC that it had "completed a review of the final investigative report" concerning RING's complaint and concluded that there is "reasonable cause" to believe BCYC had unlawfully discriminated against RING and extended a "final offer" to conciliate, and also warned BCYC that "[i]f conciliation efforts are unsuccessful…a charge of discrimination will be formally entered and a determination of Reasonable Cause will be issued." *Id.* at ¶61; Exhibit N at DE 26-14.

On June 25, 2019, Plaintiff filed her First Amended Complaint and Demand for Jury Trial to include, *inter alia*, a retaliation claim against BCYC for the expulsion.

On Friday, August 2, 2019, the parties participated in PCOHR conciliation mediation. It was unsuccessful and added fuel to BCYC's retaliation fire.

On Friday, August 2, 2019, at 6:49 P.M., BCYC's counsel served Plaintiff's counsel with thirteen (13) proposed, scorch-the-earth scope subpoenas, which can be grouped as

A. **Employer/School Records**, comprised of subpoenas directed to: (1) Bay Point Middle School, (2) Pinellas County School Board, (3) School District of Lee County, and (4) Seminole High School (attached respectively as filing-marked "Exhibit 1, "Exhibit 2," "Exhibit 3," and "Exhibit 4"); all commanding production of:

> **The complete work attendance charts, timekeeping cards, and health forms, including requests for medical leave, short-term and long-term disability leave records, workers' compensation claims files, reports of examining physicians/labs, and any work from home agreement for [Plaintiff;]**

B. **Primary Care Physician Records**, comprised of subpoenas directed to: (5) Bayfront Family Medicine Residency Center, (6) Labrador Primary Care Center, (7) Lee Physicians, (8) St. Anthony Hospital—Imaging Records Custodian, (9) St. Anthony Hospital—Medical Records Custodian, and (10) St. Anthony Hospital—Billing Records Custodian (attached respectively as filing-marked "Exhibit 5," "Exhibit 6," "Exhibit 7," "Exhibit 8," "Exhibit 9," and "Exhibit 10"), all commanding production of:

> **The complete medical, imaging, and billing records documenting medical care, treatment, or testing provided during the past ten (10) years to [Plaintiff] including mental health records, prescription drug, laboratory reports, and omitting nothing[;]**

and

C. **Gynecological Records**, comprised of subpoenas directed to: (11) Mease Dunedin Hospital—Medical Records Custodian, (12) Mease Dunedin Hospital—Imaging Records Custodian, and (13) Mease Dunedin Hospital— Billing Records Custodian School (attached respectively as filing-marked "Exhibit 11," "Exhibit 12," and "Exhibit 13").

(8/2/2019 Subpoena Conveyance Email is marked and attached as "Exhibit 14.")

After negotiation by counsel, Defendant agreed to reduce the time period from ten (10) to five (5) years for all subpoenas, and remove "billing records" from the scope of all subpoenas (thus also mooting entirely the subpoenas directed to "Billing Records

Custodians" (i.e., Exhibits 10 and 13)). Despite counsel's further efforts, on August 18-19, 2019, an impasse was reached on any further, mutually-agreed modifications.

## II.  ARGUMENT AND LEGAL ANALYSIS

A. <u>EMPLOYER/SCHOOL RECORDS</u>: SUBPOENAS DIRECTED TO EMPLOYERS AND EMPLOYER SCHOOLS SHOULD BE QUASHED BECAUSE THEY BEAR NO RELEVANCE TO RING'S ACTUAL CLAIM OF DISABILITY, SEEK "CONFIDENTIAL" INFORMATION WHICH IS TO BE PROTECTED FROM WIDE DISSEMINATION, AND ARE HARASSING IN NATURE.

The scope of discovery under Rule 45 is the same as the scope of discovery under Rule 26. *Baptiste v. Ctrs., Inc.*, No. 5:13-civ-71-Oc-22PRL, 2013 WL 3196758, at *2 (M.D. Fla. June 21, 2013); *see also Chambers v. Sygma Network, Inc.*, No. 6:12-cv-1802-Orl-37TBS, 2013 WL 1775046, at *3 (M.D. Fla. April 25, 2013) (quoting Rule 26(b)(1) and applying to a Rule 45 subpoena dispute); *Madeline LLC v. Street*, No. 09-80705-MC, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) ("Rule 45 must be read in conjunction with [Rule] 26, because the latter rule 'clearly defines the scope of discovery for all discovery devices.'") (citations omitted). Under Rule 26, unless the Court enters an order limiting discovery,

> parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The subpoena issuer bears the burden of demonstrating that the information sought is relevant. *See Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla.

2007); *Connectus LLC v. Ampush Media, Inc.*, No. 8:16-mc-00159-VMC-JSS, 2017 WL 385758, \*2 (M.D. Fla Jan. 27, 2017). This relevance requirement "'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" *Builders Flooring Connection, LLC v. Brown Chambless Architects*, No. 2:11CV373-MHT, 2014 WL 1765102, at \*1 (M.D. Ala. May 1, 2014) (quoting GAP Report of Advisory Committee to 2000 amendments to Rule 26).

"As the Advisory Committee Notes say, '[t]he Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.'" *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 355 (11th Cir. 2012) (quoting GAP Report).

1. **That Ring does not need her service animal while teaching in the classroom at work has no bearing on her claim of discrimination by the BCYC; she does not need to need her service animal during all major life activities in order to prove that she is "disabled" under the ADA.**

RING has pled that she has "a physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A).[2] Hence RING only need prove exactly what the definition of disability requires:  i.e., that she has a physical or mental impairment which substantially limits one or more of her major life activities. This dictates the parameters of discovery and thus the permissible scope of the subpoenas. The proper question, then, is whether the employer subpoenas bear relevance

---

[2] And an individual with a "handicap" under Fla. Stat. § 760.01. The Florida Civil Rights Act of 1992 follows the ADA.

to the claim actually made (again: whether Ms. Ring has a physical or mental impairment that substantially limits one or more of her major life activities). They do not.

RING has not claimed that she is disabled because she has "a record of such an impairment" or is disabled because she is "regarded as having such an impairment." 42 U.S.C. §§ 12102(1)(B) and (C). Accordingly, whether she has "a record of such an impairment" or is "regarded as having such an impairment" are simply not at issue. It is axiomatic, then, whether she has a "record of such an impairment" with her employer or anywhere else, or whether she is "regarded as having such an impairment" by others such as her employer or by other places of public accommodation simply have no bearing on the claim actually pending. There is simply no reason for BCYC to investigate whether there is "a record of such an impairment" which is precisely what the subpoenas to Ms. Ring's employers seek to do. Her employment records do not "evince Ms. Ring's disability status" (as has been proffered by BCYC's counsel).

"In general [f]or purposes of paragraph (1), major life activities **include, but are not limited to**, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A)(emphasis added).

Critically "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. §12102(4)(C). In other words, RING does not need to need her service animal during any other major life activity in order to fall within the ADA's protection while participating in an activity for which she does need the assistance of her service animal.

The BCYC is situated on a marina and hosts mainly outdoor activities. Its building facilities are open and/or are frequently exposed to the outdoors. Because of the risk of exposure to bees and other stinging insects, and for the other reasons stated in RING's First Amended Complaint [DE 26], she needs her service dog while there.

RING is a teacher in Lee County schools. Her teaching is done indoors. As explained in her Verified answers to BCYC's discovery requests, she does not use her service animal when she is working in the classroom. (Excerpt from Plaintiff's Interrogatory Answer is marked and attached as "Exhibit 15.") However RING does not need to need her service animal where she works to prove that she is disabled within the meaning of the ADA in her lawsuit against the BCYC. A deaf man who does not need a sign language interpreter while driving does not lose his status as disabled at a shopping mall because of it.

Also critical to the absence of relevance of the proposed employer subpoenas is that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(C). Anaphylactic reactions caused by insect stings are episodic by nature; so, too, are the panic attacks induced by the fear of being stung when in exposed areas.

The bottom line is that RING's request for accommodation at her place of employment, or absence thereof, does not prove an absence of disability in her suit against the BCYC, which is the BCYC's end game by subpoenaing her employment records. The BCYC does not "win" or "prove that Ms. Ring is not disabled" if RING's employment records do not indicate that she was disabled at her employer's facilities or in need of the accommodation of her service dog during all school activities. By statute,

one is simply not dispositive of the other and, in fact, using one to disprove the other is in contravention of the ADA's express language. What RING's employment records show as to her use of her service dog or an accommodation at her place of employment simply has no bearing on her status as disabled at the BCYC clubhouse (or anywhere else). Nor does the absence of her use of a service dog or other accommodation at her place of employment prove that she is not disabled at the BCYC.

**2. <u>Material in Plaintiff's employment files necessarily include personnel files and records which are "confidential in nature" warranting specific protection by this Court from "wide dissemination." In the context of this litigation, quashing the employer subpoenas *in toto* is the only way to effect such protection.</u>**

Additionally, RING has a personal right with respect to information contained in her employment records. *Barrington v Mortgage IT, Inc*., No. 07-61304-CIV, 2007 WL 4370645, at *2 (S.D. Fla. Dec. 10, 2007). If one claims a "personal right or privilege" in certain of the information sought, he/she has standing to object to subpoenas directed to non-parties. *See generally Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc*., 231 F.R.D. 426, 428-29 (M.D. Fla. 2005) ("The law governing courts in the Eleventh Circuit…is somewhat broader, and standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas.).

It is the general belief in the Middle District that personnel files and records "are confidential in nature" and "should be protected from wide dissemination." *Maxwell v. Health Ctr. of Lake City, Inc*., No. 3:05CV1056-J-32MCR, 2006 WL 1627020, at *2 (M.D. Fla. June 6, 2006) (internal quotation and citation omitted).

The employer subpoenas essentially seek that which constitutes RING's personnel files and records. Simply because the subpoenas do not use the term "personnel file and

records" nor ask for RING's "entire file" does not defeat the confidential nature of what BCYC proposes to subpoena.

BCYC is not RING's employer and she has not asserted a claim for loss of income, lost wages, or inability to work. The unnecessary dissemination of confidential, personnel records in the within litigation is tantamount to "wide dissemination" even if one pretends that the material would be dispersed in a limited fashion. BCYC is not a single person, but is an entity governed by a Board of Directors. Moreover, hovering in the backdrop is RING's claim against the CITY OF GULFPORT. There is a real risk that simply because RING had the fortitude to fight back against discrimination, her personnel, confidential information will be passed around to attorneys, paralegals, and staff of legal counsel for both the BCYC and the CITY OF GULPORT, the adjusters, insurance representatives, claims committees, and staff of their insurers, as well as among the Board of Directors and voting members of the BCYC, not to mention the multitude of persons employed by the CITY OF GULFPORT who are already involved because of RING's (ignored) requests for help from the CITY and tendering of a Notice of Claim. In the context of this case, RING submits that circulation of irrelevant, confidential material to even one person is too wide of a dissemination. Her fight against discrimination does not mean she gives up her right to privacy.

**3.  The subpoenas – especially the employer subpoenas -- are harassing in nature and for this reason alone should be quashed.**

Conciliation among the parties came to an abrupt end when RING rejected the BCYC's non-substantive settlement overtures. As punishment, the BCYC implemented its scorch-the-earth discovery campaign, serving notice of the thirteen (13) proposed subpoenas on a Friday night, initially seeking ten (10) years of information, billing

information from medical providers, and purportedly (albeit artificially) "selective" information from employers in a case in which neither employment nor income have any bearing on the claims against it.

"If it looks like a duck, swims like a duck, and quacks like a duck, then it probably *is* a duck." The employer subpoenas are harassing in nature and, for this reason alone, should be quashed.

**B. <u>SCOPE OF PRIMARY CARE PHYSICIAN RECORDS</u>: RING HAS ONLY PLACED AT ISSUE THOSE PHYSICAL AND MENTAL CONDITIONS WHICH RENDER HER DISABLED AT THE BCYC; SUBPOENAS TO MEDICAL AND HEALTH CARE PROVIDERS OR WHICH SEEK PRODUCTION OF RECORDS CONCERNING HER PHYSICAL AND/OR MENTAL HEALTH SHOULD BE LIMITED IN SCOPE TO THOSE SPECIFIC CONDITIONS WHICH SHE ALLEGES RENDER HER DISABLED IN THIS LITIGATION.**

RING recognizes that her physical and mental health are at issue in this proceeding and are an element of her case and therefore the proper subject of discovery. However, the treatment records produced should be germane to the issues in this lawsuit. The subpoenas at issue seek to compel production of all of RING's medical or psychiatric records, regardless of whether they are related to her disability or need for her service animal at BCYC.

BCYC contends that because RING filed suit against it alleging a disability, she "has placed her physical and mental condition at issue." RING agrees to the extent that she has placed at issue those physical and mental conditions which render her disabled under the ADA. Contrary to the BCYC's belief however, RING's claim does not "open the door" to all of RING's health care records as a claim with a physical/mental health component does not transmute into having placed at issue **all** of one's medical and mental health issues and conditions. RING's suit against the BCYC does not meant mandate her

acquiescence to unfettered access to all of her health care records for the last ten or even five years.

Again, RING has pled that she has "a physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A). In terms of this lawsuit, evaluation of her disability is limited to those physical and mental health conditions which substantially limit her activities at the BCYC.

RING has proposed the following modification to the subpoenas directed to her Primary Care Physicians and those subpoenas seeking her physical and mental health records:

> Medical records, including mental health records, prescription drugs, and laboratory reports, documenting medical care, treatment, or testing provided since 2014 to the individual listed below, for treatment related to ADHD [attention deficit hyperactive disorder], HBP [high blood pressure], panic attacks, anxiety, suicide, and allergies. Samantha Aviva Ring, DOB [XXXX].

BCYC rejected this proposed modification, stubbornly remaining steadfast to its belief in its entitlement to scorch-the-medical-and-mental-health-earth discovery, maintaining that "for providers to go through each page of their records and redact any mention of any other diagnosis or its symptoms" is "impossible." The Eleventh Circuit, the Middle District, and RING all disagree. *See Rondini v. Bunn*, No. 7:17-cv-01114-RDP, (U.S.D.Ct. Alabama, June 7, 2019)(emphasis added):

> As a threshold matter, the court agrees that Plaintiff is not entitled to Defendant's medical records beyond the seven-year timeframe referenced above. Any medical records prior to July 2, 2008 appear to be too attenuated to aid Plaintiff's claims stemming from the alleged July 2, 2015 assault. **Plaintiff also may not discover a medical provider's entire file on Defendant, including general health records of routine vaccinations and other common sicknesses. These records are not relevant to the claims and defenses at issue in this case** premised on Defendant's alleged imprisonment and sexual assault of the decedent and

its causal relationship to her eventual suicide. As explained more thoroughly below, the scope of Plaintiff's request is due to be limited to non-privileged records concerning the treatment of an STD (if any exist), psychiatric evaluations, and drug/alcohol abuse.

and *see Thomas v. Seminole Electronic Cooperative, Inc.,* No. 8:16-cv-3404-T-35JSS (M.D. Fla. June 6, 2017)(emphasis added):

> **The request is not tailored to medical records relating to Plaintiff's treatment for depression, the condition Plaintiff alleges to have suffered as a result of Defendant's employee's actions**. *See Cameron v. Supermedia, LLC,* No. 4:15CV315-MW/CAS, 2016 WL 1572952, at *3 (N.D. Fla. Apr. 19, 2016) (internal citations and quotations omitted) (discussing discovery relevant to a claim for emotional distress, and explaining that **'[a] defendant is entitled to production of medical records that have a logical connection to the plaintiff's claims of injury,'** instead of a 'full disclosure all plaintiff's medical records and unrestricted as to time or circumstance** simply because some level of emotional distress is claimed').

*See also Sheets v Sorrento Villages, Section 5, Association, Inc.,* No. 8:15-cv-1674-T-30JSS (M.D. Fla. May 26, 2016)(emphasis added):

> To prevail on her reasonable accommodation claim under the FHA, Sheets must establish that (1) she is disabled or handicapped within the meaning of the FHA, (2) she requested a reasonable accommodation, (3) such accommodation was necessary to afford her an opportunity to use and enjoy her dwelling, and (4) the Defendants refused to make the requested accommodation [citation omitted]. A person is considered handicapped under the FHA if she has 'a physical or mental impairment which substantially limits one or more of such person's major life activities, [has] a record of having such an impairment, or [is] regarded as having such an impairment.' 42 U.S.C. § 3602(h).
>
> **The document requests in the subpoenas are overbroad and seek information not relevant to the parties' claims and defenses because they are not limited in timeframe and encompass records unrelated to the physical or mental impairments that substantially limit one or more of Sheets's [sic] major life activities**. As such, Plaintiffs have established good cause for a protective order relating to the production of any documents unrelated to whether Sheets has the physical impairments specifically alleged in the Second Amended

Complaint (Dkt. 32 ¶ 22) or to Sheets's [sic] use of an emotional support animal.

RING implores the Court to find that the proposed subpoenas are overbroad and seek information not relevant to her claims, and to order that they be specifically tailored to the claims in this case, adopting RING's proposed modification.

**C. <u>GYNECOLOGICAL RECORDS</u>: PLAINTIFF'S GYNECOLOGICAL RECORDS ARE NOT REMOTELY RELEVANT TO THE CLAIMS IN THIS CASE; SUCH RECORDS CONTAIN INFORMATION OF AN ELEVATED LEVEL OF PERSONAL INTIMACY AND PRIVACY WHICH IS RECOGNIZED AS SPECIALLY PRIVILEGED WARRANTING THAT THE SUBPOENAS DIRECTED TO "MEASE DUNDEDIN" BE QUASHED, *IN TOTO*.**

"Mease DundedIn" is where RING had a hysterectomy. Subpoenas directed to it invariably contain RING's gynecological records – records which are not remotely related to her disability nor, more importantly, are they relevant to the disability inquiry that is appropriate given the actual claims in this case. Unlike records concerning treatment for a cold or a sprained ankle, gynecological records concern matters of an elevated level of intimacy and privacy which "extend[] a personal right or privilege." Given that it was only based upon RING's representations in her discovery responses that she received treatment at Mease Dunedin Hospital at all that BCYC conceived to subpoena records from that facility, BCYC has no basis to disbelieve that her treatment at Mease Dunedin Hospital was for anything else.

Not only are RING's gynecological records not relevant in this case, but such records are protected by a "special privilege" in that they are subsumed by the "privacy right" inured by a woman's right to chose to terminate a pregnancy and to terminate her ability to reproduce. *Thornburgh v Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 767-68, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986), *overruled on other grounds by Planned*

*Parenthood v Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed. 2d 674 (1992) (leaving intact the essential holding of *Roe v Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973))("The decision to terminate a pregnancy is an intensely private one that must be protected in a way that assures anonymity.... `It is inherent in the right to make the abortion decision that the right may be exercised without public scrutiny and in defiance of the contrary opinion of the sovereign or other third parties.'... A woman and her physician will necessarily be more reluctant to choose an abortion if there exists a possibility that her decision and her identity will become known publicly.").

Given the nature of gynecological records, what is or may be contained in RING's gynecological records carries the substantial likelihood that they include highly personal, intimate, and private information protected by special privilege. Rule 45(d)(3)(A) identifies circumstances in which a court is required to quash or modify a subpoena. Such circumstance expressly includes "disclosure of privileged or other protected matter[.]" Rule 45(d)(3)(A)(iii).

## III.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that an order be issued (a) quashing, *in toto*, or otherwise directing that Defendant is not to serve the four proposed subpoenas to her employers/schools or the proposed subpoenas to Mease DunedIn; and (b) adopting the Plaintiff's proposed limitations stated *supra* or otherwise ordering that any subpoenas directed to Plaintiff's Primary Care Physicians or any entity from which her physical or mental health care records are sought be limited to only those physical or mental health care conditions which are at issue in this case. Alternatively, if the Court upholds the subpoenas as proposed (with the mutually agreed-to modifications), Plaintiff

respectfully requests that the subpoenas be modified to require that any records produced in response be received by the Court, with a complete copy to Plaintiff's counsel, so that the Court can review any such treatment records *in camera* to determine if they may be used in this case.

## IV.  CERTIFICATION OF COMPLIANCE WITH RULE 3.01

The undersigned to the *Certificate of Service* certifies that she has conferred with opposing counsel in a good faith effort to resolve by agreement the issues raised herein. While some modification to the subpoenas' scope has been mutually agreed to, counsel has reached an impasse as to Plaintiff's request that the subpoenas to her employers/schools and Mease DundedIn be withdrawn, or that subpoenas to her Primary Care Physicians or seeking her medical or mental health care records be limited to the specific claims of disability relative to this case.

Respectfully submitted,

MARCY I. LAHART, P.A.                        VENZA LAW, PLLC
207 SE Tuscawilla Road                       931 Village Boulevard, #905-322
Micanopy, FL 32667                           West Palm Beach, FL 33409
Telephone: (352) 545-7001                    office: (561) 596-6329
Facsimile: (888) 400-1464                    email: dvenza@venzalawpllc.com
marcy@floridaanimallawyer.com

BY: s/ *Marcy I. LaHart*                      BY: s/*Denese Venza*
Marcy I. LaHart, Esq.                        Denese Venza, Esq.
Florida Bar No. 0967009                      Florida Bar No. 599220
*Counsel for Plaintiff*                      *Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on 20th day of August, 2019 a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: s/ *Denese Venza*
*Counsel for Plaintiff*