UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA RING,

                Plaintiff,                Case No. 8:19-cv-00772-VCM-JSS

vs.

BOCA CIEGA YACHT CLUB, INC.,

                Defendant.

_____/

**PLAINTIFF SAMANTHA RING'S RESPONSE TO DEFENDANT BOCA CIEGA YACHT CLUB'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND STRIKE JURY TRIAL DEMAND**

Plaintiff SAMANTHA RING ("Plaintiff" and/or "RING"), by and through undersigned counsel, responds to Defendant Boca Ciega Yacht Club, Inc.'s ["BCYC" and/or "Defendant"] Motion to Dismiss the Second Amended Complaint and Strike Jury Trial Demand [DE 48] ("Motion to Dismiss") as follows:

**SUMMARY OF MOTION TO DISMISS**

RING filed a disability discrimination suit against BCYC pursuant to the Americans with Disabilities Act ("ADA") more than six months ago. At that time, RING was a member of BCYC, a self-proclaimed boating club and social club. RING's claims stemmed from being excluded from the BCYC club house when accompanied by her service animal, and later expanded to include claims for having been expelled in retaliation for asserting her rights under the ADA. BCYC now moves to dismiss the case "in its entirety" on the grounds that RING lacks standing. According to BCYC, because RING is only entitled to injunctive relief and the discrimination against her has allegedly ceased -- courtesy of the expulsion -- RING cannot establish an "injury-in-fact." Distilled to its

essence, BCYC's argument is that its discriminatory expulsion under pretextual reasons simultaneously moots RING's claims and eliminates her standing under the ADA, giving BCYC a free pass for its prior discriminatory conduct in the process. Such an interpretation of the ADA leads to an absurd result and ignores the fact that by barring RING from the club, BCYC's discriminatory conduct persists in perpetuity.

BCYC also renews its argument that RING did not exhaust her administrative remedies under the Florida Civil Rights Act, pointing to the results of a public records request from the Florida Commission on Human Relations as its proverbial smoking gun. It is undisputed that RING filed a complaint with the Pinellas County Office of Human Rights, and Florida law is clear that a discrimination victim may file a complaint "with any unit of government of the state which is a fair-employment- practice agency under 29 C.F.R. ss. 1601.70-1601.80" in lieu of filing with the Florida Commission on Human Relations.

Finally, BCYC argues that even if RING did exhaust her administrative remedies, RING is not entitled to damages. However, BCYC provides no authority for the proposition RING's cannot bring a statutory negligence claim based upon violation of a statute clearly intended to protect the rights of persons with disabilities that rely upon service animals to be given the same rights of access as non-disabled persons.

    I.     **RING HAS STANDING TO SUE BCYC UNDER THE ADA**

    A. **THE U.S. SUPREME COURT HAS MADE CLEAR THAT STANDING IS DETERMINED THE DATE THE LAWSUIT IS COMMENCED; APPLYING THIS CORRECT RULE OF LAW TO BCYC'S OWN ANALYSIS AND TO THE FACTS OF THIS CASE AS PLED CONSISTENLY IN EVERY PLEADING, BCYC'S CHALLENGE TO STANDING IS BORDERLINE FRIVOLOUS.**

The determination of whether a plaintiff has standing to bring suit is made as of the date the lawsuit is commenced. *Resnick v. Magical Cruise Company Ltd.*, 148 F.Supp.2d 1298 (M.D. Fla. 2001), *citing Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569 n. 4, 112 S.Ct. 2130 (1992); *Paul Revere Variable Annuity Ins. Co. v. Zang,* 248 F.3d 1, 5 n. 2 (1st Cir.2001); *Becker v. Fed. Election Comm'n,* 230 F.3d 381, 386 n. 3 (1st Cir.2000); *Steger v. Franco, Inc.,* 228 F.3d 889, 893 (8th Cir.2000); and *Tucker v. Phyfer,* 819 F.2d 1030 (11th Cir.1987).

In her initiating Complaint, RING clearly alleged present, on-going discrimination:

> 13. BCYC is aware that Piper is a service animal that provides disability-related assistance to RING and that RING wishes to be able to be accompanied by Piper when RING visits the BCYC clubhouse.
>
> 14. BCYC steadfastly refuses to allow RING to be accompanied by Piper when RING goes to the BCYC clubhouse.

Complaint and Demand for Jury Trial [DE 1 at ¶¶ 13, 14].

### B. EVEN IF THE COURT WERE TO APPLY THE FOUR FACTOR ANALYSIS, THE CONTENTION THAT RING LACKS STANDING IS BASELESS.

1. <u>It is IRREFUTABLE that RING desires to return to BCYC</u>.

Although BCYC asserts "[f]or the purpose of this Motion to Dismiss, BCYC is only asserting a facial challenge to Ms. Ring's standing under Title III of the ADA," labeling it such doesn't make it so. *See* Motion to Dismiss at 3. The Motion to Dismiss is asserted under Rule 12(b)(1) and 12(b)(6). *Id.* at 1. Because the very power of the Court to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence outside the complaint. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 (11th Cir. 1982).

Unlike **all** of the cases BCYC relies upon, this is not an ADA case involving architectural barriers. At issue is an intangible barrier. *Rendon v. Valleycrest Prods., Inc.*, 294 F.3d 1279, 1283 (11th Cir. 2002) (noting that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges....")

Moreover, unlike all of the cases BCYC cites in its Motion to Dismiss, there is no question that RING has made clear she wishes to return to BCYC, and would return if allowed. At her deposition, RING testified, emphatically, that BCYC was her "home" and how devastating to her whole world BCYC's expulsion was.[1] In fact, in a panic over the very recent threat of Hurricane Dorian and the lack of exactitude over of its "where and when," RING sought refuge for her boat from BCYC and was declined even consideration – evidence of both her actual attempt to return as well as BCYC's continuation of discrimination.

Factual investigation bears out RING's present, undeniable intent to return to BCYC, but for BCYC's ongoing discriminatory bar to her presence.

> 2. Even if limited to the four corners of the Complaint, scrutiny of BCYC's facial challenge reveals its flaws, confirms RING's standing, and affirms subject matter jurisdiction.

RING, an avid sailor, has been a member of BCYC for more than a decade. [DE:47, ¶6.] RING was expelled from the BCYC in retaliation for exercising her rights under the

---

[1] RING's deposition was taken on October 16, 2019, and the transcript is not yet available. However, pertinent excerpts from same will be filed forthwith should the Court direct that same is needed at the upcoming October 28th hearing.

ADA, [DE:47, ¶44.] and RING continues to be denied the benefits of membership in the club. Ring's injury is ongoing.

BCYC focuses myopically on RING's request that this Court enter "an order enjoining/restraining BCYC from further acts of discrimination including, but not limited to, excluding persons with disabilities accompanied by service dogs from any portion of its premises, including the clubhouse," and asserts that since it expelled RING she cannot visit the club herself and "she has no standing to vindicate the rights of other persons with disabilities who might visit the BCYC." BCYC ignores the fact that RING's also seeks additional relief, specifically an "order placing RING in the position she would have been in had there been no violation of her rights." [DE:47 at 10, ¶ D.] If this relief is granted RING's membership in BCYC will be reinstated. RING is not a drive-by litigant that was injured by being denied access to a far from home facility she visited once and may or may not return to in the future. To the contrary, RING is a resident of Gulfport and avid sailor that belonged to BCYC for twelve years before being ousted for pretextual reasons.

To satisfy Article III's standing requirements, RING must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable court ruling. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013); *see also Norkunas v. Seahorse NB*, LLC, 444 F. App'x 412, 415 (11th Cir. 2011) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Injunctive relief requires a further showing of a plaintiff's actual or imminent injury. *Kennedy v. Sai Ram Hotels LLC*, Case No. 8:19-cv-483-T-33JSS, at *3 (M.D. Fla. May. 13, 2019) citing *Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018).

RING has established injury-in-fact by having been deprived of the full benefit of her membership in BCYC, particularly the same access to the clubhouse as non-disabled members. RING was then further injured by being targeted for a retaliatory expulsion, and continues to suffer adverse effects of that expulsion. "A plaintiff can establish injury-in-fact by showing a loss of opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of any entity." *Kennedy v. Sai Ram Hotels LLC*, *Id*. citing, *Houston v. 7-Eleven, Inc.*, No. 8:13-cv-1845-T-17AEP, 2014 WL 5488805, at *7 (M.D. Fla. Oct. 30, 2014). RING has lost the opportunity to participate in or benefits from the goods, services, facilities, privileges, advantages or accommodations provided to others by BCYC. RING's injuries are caused by BCYC's discriminatory conduct and can be redressed by the relief RING has requested, being placed in the position she was in before the discrimination, i.e. reinstated to the BCYC, and allowed access to all portions of the premises other members may go when RING accompanied by her service dog. [DE:47, pg. 9-10]

RING is not required to make futile continuing attempts to enter BCYC with her service dog in order to have standing. The existence of a private right of action does not depend upon how many attempts a plaintiff has made to overcome a discriminatory barrier, but, rather, upon whether the barrier remains in place. *See generally Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003) (emphasis added). In this case two barriers prevent RING from enjoying the benefits of BCYC: (1) BCYC's continued policy of denying access to the clubhouse to disabled persons accompanied by service animals and (2) the fact that RING was expelled from BCYC because she complained and sought reversal of that policy.

The Supreme Court has mandated a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)). BCYC has not retracted from its policy of excluding persons with a disability related need for a service animal access to its clubhouse, and in fact continues to advance the rather bold argument that it is a "private club" free to discriminate with impunity. BCYC's ongoing policy of discrimination added to RING's ongoing injury from the retaliatory expulsion are more than sufficient to support her standing to seek an injunction against BCYC. Further, RING's proximity to the club, love of sailing and long-time tenure as a member of BCYC support the inference that her injury is continual.

Moreover, a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000,* 567 U.S. 298, 132 S.Ct. 2277, 2287, 183 L.Ed.2d 281 (2012). When a defendant voluntarily ceases the activity that forms the basis of the lawsuit, a federal court does not necessarily lose jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Instead, the party asserting mootness must show that "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); *see also Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th

Cir.2005) ("[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.").

In the instant case, there has been no "cessation of offensive conduct," voluntary or otherwise, as BCYC's discriminatory conduct persists so long as RING remains expelled.

##  II.  RING HAS EXHAUSTED HER ADMNISTRATIVE REMEDIES

### A.  THE COURT SHOULD HOLD TRUE TO RULE 12(b)(6) JURISPRUDENCE AND LIMIT ITS REVIEW TO THE FOUR CORNERS OF THE COMPLAINT WHICH DICTATES DENIAL OF THE MOTION TO DISMISS.

According to BCYC, "[i]n order to establish the timeline necessary to proving [her claim that BCYC retaliated against her after she filed a Charge of Discrimination with the PCOHR], Ms. Ring will first have to establish that she filed a Charge of Discrimination with the PCOHR, which will require offering this dated, verified, original Charge of Discrimination as proof." Motion to Dismiss at 4. This is inaccurate. Under examination is RING's Complaint. "Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit." Fed. R. Civ. P. 11(a) *Pinkston v. University of South Florida Board of Trustees*, *et al.,* Case No. 8:18-cv-2651-T-33SPF. (M.D. Fla. 2018)(J. Covington).

> On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.

*Holliday v. Syndicate 3000 at Llyod's, Underwriters at London,* Case No. 8:17-cv-2063-T-33AEP (M.D. Fla. May 18, 2018)(J. Covington)(citations omitted).

BCYC then asks the Court to take "judicial notice" of two documents under the auspices that they are "at the very heart of the plaintiff's claims." Motion to Dismiss at 4.

This, too, is inaccurate. While "retaliation" is, indeed, a part of RING's claims, it is not its core: discrimination is. *See* DE 47. Moreover, RING has already provided by way of the multiple Exhibits attached to the Second Amended Complaint, that which is needed for the Court to evaluate any of RING's claims pled. *Id.* "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St*. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). Consequently, BCYC's request for the Court to review and consider matters outside of the four corners of the Complaint necessarily converts BCYC's Motion to Dismiss to one of Summary Judgment mandating Rule 56 analysis, upon which BCYC's shoulders the burden of proof rests. However, given that discovery has not yet closed, summary judgment analysis would be premature and the appropriate course of action is for the Court to deny the Motion to Dismiss:

> '[C]ourts normally should not conflate subject matter jurisdiction with elements of an action's merits.' *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 79 (3d Cir. 2003). 'Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'' *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted [in original]).
>
> For this reason, Eleventh Circuit case law 'hold[s] that if the attack implicates an element of the cause of action, courts are to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.' *Scarfo v. Ginsberg*, 175 F.3d 957, 965 (11th Cir. 1999)(citation and quotation marks omitted [in original]). 'In such a case, a district court is to evaluate a defendant's assertion of lack of subject matter jurisdiction as a Rule 12(b)(6) motion or a motion for summary judgment, and send the case to the jury if there are disputed issues of material fact.' *Id*.

*Lawson v. Mid-Atlantic Finance Co., Inc.,* Case No. 8:18-cv-2451-T-33TGW (M. D. Fla. November 29, 2018)(J. Covington).

Here, as this Court did in *Lawson v Mid-Atlantic Finance*, the Court should "[t]reat[] the Motion as a Rule 12(b)(6) motion and limit[] [its] review to the four corners of the Complaint" and deny BCYC's Motion to Dismiss. *Id.*

    B.  EVEN IF THE COURT WERE TO ESCHEW RULE 12(b)(6) PRECEDENT, BCYC'S MOTION TO DIMISS SHOULD BE DENIED GIVEN ITS CONVULTED INTERPRETATION OF FLA. STAT. § 760.01 AND RING'S CLEAR EXHAUSTION OF ADMINISTRATIVE REMEDIES.

BCYC claims RING was required to file an administrative complaint with the Florida Commission on Human Relations (FCHR) instead of or in addition to the complaint RING filed with the Pinellas County Office of Human Relations (PCOHR). BCYC supports this assertion based upon a convoluted interpretation of the Florida Civil Right Act, Fla. Stat. § 760.01 et seq. ("FCRA"). BCYC asks the Court to assume that the FCHR is "the only agency ultimately tasked with entering a determination the Charge for the purpose of ensuring that a claimant's administrative remedies are exhausted." After all, according to BCYC, "[w]ere this not the case, the Florida Legislature would surely not have found it necessary to clarify that the Commission had to accord weight to another agency's findings." BCYC fails to cite to one case supporting this tortured reading of the statute. If the Florida Legislature had intended that the FCHR be the only agency empowered to issue a ruling on a charge of discrimination, the Florida Legislature would have expressly provided exclusive jurisdiction to the FCHR,

To the contrary, the Florida Legislature enacted § 760.11 (1), Fla. Stat. providing that "In lieu of filing the complaint with the commission, a complaint under this section may be filed with the federal Equal Employment Opportunity Commission or with any unit of government of the state which is a fair-employment-practice agency under 29 C.F.R. ss. 1601.70-1601.80). " *See Wingfield v. S. UF, Inc.*, No. 8:09-cv-1090-T-24-TBM, 2009 U.S.

Dist. LEXIS 60431, at *6 (M.D. Fla. July 15, 2009) ("Under the so called 'work-sharing agreement' between the EEOC and the FCHR, a filing with a single agency constitutes dual filing…Additionally, the FCRA states that the date that a complaint with the FCHR will be considered to have been filed 'is the earliest date of filing with the Equal Employment Opportunity Commission, the fair-employment-practice agency, or the [FCHR].' *Id.* § 760.11(1).") *citing Mason v. K Mart Corp.*, 1 F. Supp. 2d 1333, 1336 (M.D. Fla. 1998) (finding the plaintiff's filing with the EEOC to constitute filing with the FCHR); *see also Segura v. Hunter Douglas Fabrication Co.*, 184 F. Supp 2d 1227, 1228 (M.D. Fla. 2002) accord *Sheely v. MRI Radiology Network*, *P.A.*, 505 F.3d 1173, 1205 (11th Cir. 2007) ("The Act provides that '[a]ny person aggrieved by a violation of §§ 760.01-760.10 may file a complaint with the [Florida] [C]ommission [on Human Relations] within 365 days of the alleged violation . . . . [or] with the federal Equal Employment Opportunity Commission or with any unit of government of the state which is a fair-employment-practice agency under 29 C.F.R. §§ 1601.70-1601.80.' *Id.* § 760.11(1).") (emphasis added).

RING was not required to file a complaint with the FCHR. RING filed a complaint with PCOHR, a fair-employment-practice agency, which investigated her complaint and found against BCYC. It been well over 180 days from when RING filed her initial complaint with the PCOHR. PCOHR completed an investigation and found that (1) BCYC does not qualify for a "private club" exemption from the ADA, (2) that RING has a disability related need for her service dog, (3) that BCYC discriminated against RING based upon her disability and her religion and (4) that BCYC illegally retaliated against RING when it expelled RING for pretextual reasons. [DE:38-C]

RING participated in an unsuccessful "conciliation" and when PCOHR forwarded her complaint to the Florida Division of Administrative Hearings, RING filed a voluntarily dismissed because neither PCOHR nor a DOAH Administrative Law Judge can grant RING any meaningful relief. Neither agency can issue and injunction to restore RING's membership in BCYC or require BCYC to accommodate her service dog. Neither agency can award RING meaningful compensatory damages. See *Broward County v. La Rosa*, 505 So.2d 422 (Fla.1987)(administrative agency cannot award money damages for humiliation and embarrassment under the County's Human Rights Ordinance).

Again without citation to authority, BCYC states that "[a]bsent a ruling on the merits by DOAH, the PCOHR findings do not and cannot constitute a final agency decision, as BCYC was deprived of its due process rights to challenge the agency's finding once the Charge was dismissed." Motion to Dismiss at 11. As a matter of law RING's only condition precedent to bringing a FCRA claim was that she filed an administrative complaint and gave the investigating agency 180 days to do its job. *See* §760.11(8) Fla. Stat. ("In the event that the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days of the filing of the complaint, an aggrieved person may proceed under subsection (4), as if the commission determined that there was reasonable cause."). Regardless of how BCYC tries to spin the facts, indisputably more than 180 days have passed since RING filed her complaint with PCOHR and RING has exhausted her administrative remedies.

### III. WHETHER BCYC'S FACILITIES ARE A PUBLIC ACCOMMODATION IS A FACTUAL DETERMINATION

BCYC also asserts that it is not a place of public accommodation under the FCRA. A place of public accommodation includes "[a]ny movie picture theater, theater, concert

hall, sports arena, stadium, or other place of exhibition or entertainment." §760.02(11)(c) Fla. Stat. Sailing is a form of entertainment. BCYC frequently hosts other exhibitions and entertainment events including celestial navigation classes, sailing schools, "Paint Your Own Wine Glass" events, and an open house, all of which are open to the public, some for weeks at a time. [DE 47, ¶72.] *See generally State v. City of Miami*, 40 So. 2d 207 (Fla. 1949) ("Moreover, in the instant case it has been established that the so-called private sailing club is not in the true sense of the word a private club. To say the least, it partakes of the nature of a quasi-public enterprise. Regattas and other sailing events sponsored by the club are open to the public and anyone can join the club who is interested in sailing and is of good character. Even non-members who are interested in sailing are given instructions in that sport by the club. Any person owning a boat who desires to enter the same in a race sponsored by the club is permitted to do so.")

BCYC points out that pursuant to the FCRA that "lodge halls or other similar facilities of private organizations which are made available for public use occasionally or periodically" do not qualify as public accommodations under the FCRA. Motion to Dismiss at 12. Whether the public enjoys such frequent access to BCYC's facilities for the facilities to qualify as public accommodations is a disputed factual determination that is not appropriately resolved in a motion to dismiss. *Cohan v. Marco Island Marina Ass'n, Inc.*, 56 F. Supp. 3d 1254, 1257 (M.D. Fla. 2014). As in *Cohan v. Marco Island Marina Ass'n,* "taking the factual allegations alleged in Plaintiff's Complaint in the light most favorable to Plaintiff, the non-movant, a question remains as to whether Defendant's admitted [public use of its facilities] to individuals on a transient basis disqualifies it from the private club statutory exemption of the ADA." *Id.*

### IV.    RING HAS STATED A CAUSE OF ACTION FOR STATUTORY NEGLIGENCE

The 11th Circuit agrees that the FCRA provides for a private right of action for violation of Florida Statutes §§ 413.08 and 413.081. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1204 (11th Cir. 2007). While the court in *Sheely* determined that a medical office is not a place of public accommodation under the FCRA, it did not question that disabled individuals have the right to sue under the FCRA if their right to be accompanied by service animals in places of public accommodation is infringed upon. Again, whether BCYC is a place of public accommodation is very much a hotly disputed issue at this point.

RING, who relies upon a service dog, is clearly a member of the class of individuals intended to benefit from Florida Statutes §§ 413.08 and 413.081. The Florida Supreme Court has instructed that courts should focus on legislative intent in order to determine whether a private cause of action should be judicially inferred. *Murthy v. N. Sinha Corp.*, 644 So. 2d 983 (Fla. 1994). The purpose of §§ 413.08 and 413.081 is to ensure persons with disabilities enjoy an equal opportunity to benefit from the public accommodation's goods and services, including individuals that rely upon service animals. Section 413.081[2] makes it illegal to interfere with a service animal by obstructing, intimidating, or otherwise or otherwise jeopardizing the safety of the service animal or its user. Section 413.081 (4)(a) Fla. Stat. provides that a person who is convicted of violating this section must make full

---

[2] A person who, with reckless disregard, interferes with, or permits a dog that he or she owns or is in the immediate control of to interfere with, the use of a service animal by obstructing, intimidating, or otherwise jeopardizing the safety of the service animal or its user commits a misdemeanor of the second degree for the first offense and a misdemeanor of the first degree for each subsequent offense, punishable as provided in s. 775.082 or s. 775.083.

restitution for all damages that arise out of or are related to the offense, including incidental and consequential damages incurred by the service animal's user in addition to any other penalty. Clearly the Legislature intended service dog handlers that are victims of discrimination to be able to seek redress.

Where a statute is remedial in nature, it should be liberally construed to "preserve and promote access to the remedy intended by the Legislature." *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000) (holding that chapter 760, Florida Statutes, relating to employment discrimination, is remedial and requires a liberal construction to preserve and promote access to the remedy intended by Legislature.) BCYC identifies no authority holding that a disabled individual that has been deprived of his or her right to full and equal accommodations, use of a service dog notwithstanding, has no remedy under state law.

## V. CONCLUSION

The Court should deny Defendant's Motion to Dismiss the Second Amended Complaint.


Respectfully submitted,


| | |
|---|---|
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |
| **MARCY I. LAHART, P.A.** | **VENZA LAW, PLLC** |
| */s/ Marcy LaHart* | *s/ Denese Venza* |
| Marcy I. LaHart, Esq. | Denese Venza, Esq. |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| (352) 545-7001 | (561) 596-6329 |
| marcy@floridaanimallawyer.com | dvenza@venzalawpllc.com |
| Florida Bar No. 0967009 | Florida Bar No. 0599220 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of October, 2019 a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: s/ *Marcy LaHart*
Counsel for Plaintiff