UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA RING,

                Plaintiff,                Case No. 8:19-cv-00772-VCM-JSS

vs.

BOCA CIEGA YACHT CLUB, INC.,

                Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
BCYC'S MOTION TO MODIFY THE CASE SCHEDULING ORDER [DE 51]**

Plaintiff SAMANTHA RING ("Plaintiff" and/or "RING"), by and through undersigned counsel opposes and responds to Defendant's [Boca Ciega Yacht Club, Inc.'s (hereafter "BCYC" and/or "Defendant"]) Motion to Modify the Case Scheduling Order to Extend the Parties' Expert Disclosure, Discovery, and Dispositive Motion Deadlines By 30 Days [DE 51] (hereafter "BCYC's Motion for Extensions") as follows:

*BCYC's Tactical Gamble and Back Door Attempt
Around an Absence of Due Diligence*

Defendant BCYC hangs its "extension request hat" entirely on the fact that Plaintiff's Motion to Quash [DE 36] was pending, claiming in its Motion for Extensions that "[w]hile Plaintiff's Motion to Quash is pending, BCYC is effectively precluded from…obtaining medical records" [DE 51], and maintaining when soliciting Plaintiff's counsel's joinder of the Motion for Extensions "we intend to move Judge Covington to extend…deadlines…given that no ruling has been rendered on Plaintiff's Motion to Quash."[1]

---

[1] BCYC's counsel's solicitation communication is marked, attached, and incorporated herein as "Exhibit 1."

Inasmuch as the Motion to Quash is no longer pending,[2] BCYC's proffered basis for seeking any extension is mooted and so, too, is its Motion for Extensions.

The truth is, however, the Motion to Quash was a red herring to hide BCYC's absence of due diligence in substantively defending this case. Without proving its own due diligence, BCYC can't show "good cause" and without good cause there can be no modification. Scrutiny of the Court's docket and BCYC's actual, discovery-related activity reveals its absence of due diligence and the tactical gamble it took in failing to pursue discovery, make disclosures, obtain an expert, and otherwise ignore the Case Management and Scheduling Oder ("CMSO") until the eve of the Expert Disclosure deadline. "The Court's deadlines are not suggestions that can be ignored." *Perez v. Garrow,* 2014 WL 4285384 n. 3 (M.D. Fla. 2014).

## I. ARGUMENT AND LEGAL ANALSYS APPLIED

### A. BCYC'S "DUE DILIGENCE" IS THE STANDARD BY WHICH ITS MOTION FOR EXTENSIONS IS SCRUTINIZED; PREJUDICE IS IMMATERIAL TO THE COURT'S ANALYSIS.

By rule, the Court was required to enter a Case Management and Scheduling Oder ("CMSO"). Fed. R. Civ. P. 16(b). The CMSO controls the course of the case unless it is modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Abruscato v. GEICO Gen. Ins. Co.*, No. 3:13-CV-962-J-39JBT, 2014 WL 12616965, at *2 (M.D. Fla. May 30, 2014). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998) (*quoting* Fed. R. Civ. P. 16 advisory committee's note). Thus, "due diligence" is the standard the Court applies in deciding BCYC's Motion for Extensions. *Shehada v. City of Miami Beach, Fla.*, Case No. 11-22051-CIV, 2012 WL 3801726 at * 2 (S.D. Fla. Aug. 30, 2012) ("If the court finds that the party lacked due diligence, then the inquiry into

---

[2] Order [DE 51].

good cause is ended."); *Lord v. Fairway Electric Corp.,* 223 F.Supp.2d 1270, 1278 (M.D. Fla. 2002) ("Absent a showing of diligence on the part of a party seeking to extend deadlines contained in the scheduling order, the court-ordered schedule should not be disturbed."); *Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249, 1252 (M.D. Fla. 2000) (**Prejudice is immaterial in determining whether there is good cause under Rule 16**)(emphasis added).[3]

### B. BCYC'S TACTICAL DECISION TO WAIT UNTIL THE EVE OF THE EXPERT DISCLOSURE DEADLINE EXEMPLIFIES ITS ABSENCE OF "DUE DILIGENCE" AND DISREGARD FOR THE CMSO.

The CMSO in this case was entered on April 26, 2019 [DE 17]. Motions to extend deadlines are "distinctly disfavored after entry of the Case Management and Scheduling Order." M.D. Fla. R. 3.05(c)(2)(E). BCYC has the burden of proving its due diligence in complying with same before its Motion seeking modification of deadlines it pointedly ignored can even be entertained.

BCYC made a tactical decision to wait until the eve of the Expert Disclosure deadline to begin overtures toward obtaining an extension; it wasn't until 11:23 A.M. the morning before that BCYC's Local Rule 3.01 "confer with counsel" efforts on the matter even commenced. (BCYC's Day-Before-Deadline "High Importance" Communication is marked, attached, and incorporated herein as "Exhibit 1.") The Expert Disclosure deadline was October 23, 2019 [DE 17]; BCYC's Motion for Extensions was filed on October 22, 2019 [DE 51].

BCYC's eleventh hour filing and last minute, "High Importance" confer communication exemplify the absence of its due diligence in defending this case on substantive grounds as well as its pattern of disregard for CMSO deadlines. As of the filing of the within Response in

---

[3] Even though "prejudice" is not an evaluation factor in the matter now before the Court, Plaintiff disputes BCYC's unsupported statements that the "extension of time sought by BCYC will not prejudice Plaintiff, who opposes this Motion, but would also stand to benefit from the requested extension[s]." Motion for Extensions at 1. If called upon to do so, Plaintiff is prepared to laundry list the prejudices that will inure to her if BCYC is rewarded for its absence of due diligence and procures any of the extensions sought.

Opposition, the Motion to Quash has been decided and BCYC has yet to serve the purportedly critical subpoenas upon medical providers. (BCYC's Counsel's, "High Importance" 11/1/2019 communication attaching subpoena which it had already dispatched for service upon Plaintiff's employer is marked, attached, and incorporated herein as "Exhibit 2." Note the absence of any reference to health care provider subpoenas, much less reporting service of same. *See id.*)

What's more is that BCYC has failed to serve any disclosures whatsoever, expert witness or otherwise, making a tactical gamble that it's eleventh hour request for deadline extensions will exonerate its failure to otherwise comply with the CMSO. It bears repeating that "[t]he Court's deadlines are not suggestions that can be ignored." *Perez v. Garrow*, 2014 WL 4285384 n. 3 (M.D. Fla. 2014). The discovery rules are intended to create an integrated procedure for discovery in civil cases. *Hickman v. Taylor*, 329 U.S. 495, 505, 67 S.Ct. 385, 91 L.Ed. 451 (1947). They are designed to prevent surprise and allow both sides to adequately prepare their cases. *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). The CMSO does not change the discovery rules. While it establishes the deadlines for the parties to make their expert witness disclosures, it does not provide a reason for not making the disclosure of an expert witness. *See generally id.*

   C. BCYC HAS DONE LITTLE TO DEFEND THIS CASE ON SUBSTANTIVE GROUNDS AND CANNOT MEET ITS BURDEN OF PROVING DUE DILIGENCE.

As the docket will reflect, BCYC has done little to develop and defend this case on substantive grounds.[4] Its contention that Plaintiff's Motion to Quash precluded its ability to comply with the CMSO, most notably the Expert Disclosure deadline, is simply unsubstantiated.

First, BCYC has served no disclosures whatsoever.

---

[4] BCYC's "defense" efforts have been to dismiss the Plaintiff's pleadings. *See* docket.

Second, BCYC did not seek supplementation of Plaintiff's discovery responses – ever. It did not confer, or even attempt to confer, with Plaintiff's counsel about any perceived deficiencies, nor did BCYC file a Motion to Compel or otherwise seek the Court's assistance. Instead, BCYC seeks to backdoor around its failure to complain about purported deficiencies within the required thirty (30) days of receipt of the responses by raising same in its hail-Mary Motion for Extensions instead.

Third, BCYC waited until the day before a deadline to seek an extension, and thereafter missed the deadline.[5] The CMSO dictates that one is to plan and serve discovery so as to stay in conformity with the deadlines therein, moreover: "The filing of a motion for extension of time does not toll the time for compliance with deadlines established by Rule or Order." [DE 17.]

BCYC proactively let a deadline pass without compliance. BCYC could, and should, have filed its Motion for Extensions sooner and/or found a rebuttal expert sooner. Its failure to seek CMSO relief sooner while purposefully letting the Expert Disclosure pass by is the antithesis of due diligence.

Additionally, BCYC falsely claims that the Motion to Quash precluded its ability to…well…do…anything (i.e, serve subpoenas, serve discovery, depose witnesses, find an expert, investigate the Plaintiff's medical claims, etc.). *See* Motion for Extensions. This claim flies in the face of its counsel's October 31, 2019, communication requesting (for the first time) Plaintiff's availability for a Compulsory Medical Examination ("CME"), stating: "[t]he scope of the examination will be limited to the alleged medical conditions that Ms. Ring is claiming are disabilities." (Communication evidencing that BCYC has and has had more than sufficient knowledge of the Plaintiff's medical conditions is marked, attached, and incorporated herein as "Exhibit 3.") Inasmuch as BCYC had no subpoena responses or any more information than it had

---

[5] As of this filing, BCYC has served no Expert Disclosure deadline, gambling on its Motion to Quash argument as protection for its unilateral modifications.

the day of Plaintiff's October 14, 2019, deposition, there is no reason BCYC couldn't have sought a CME earlier and thus complied with the Expert Disclosure deadline.

There was no "six days" of counsel conferencing regarding BCYC's proposed subpoenas. Motion for Extensions at 3. At best, there were three days, and the conference was "prolonged" due only to BCYC's counsel's lack of availability and failure to respond. (Plaintiff's Counsel's August 13, 2019, Letter and August 15, 2019, Letter are marked, attached, and incorporated herein respectively as "Exhibit 4" and "Exhibit 5.") As soon as Plaintiff's counsel received the proposed subpoenas, counsel requested modification of the breadth and scope, explaining the reasons, and proposed an alternative scope which still allowed BCYC's unfettered access to all of Plaintiff's medical records for the last five years which were germane to her disability claims made in this action, limiting only BCYC's access to Plaintiff's gynecological, medical billing, and other unrelated records for the last decade. *Id.; see also* Plaintiff's Motion to Quash [36] which Plaintiff expressly incorporates herein.

Moreover, BCYC's subpoenas were overbroad in scope, a point Magistrate Judge Sneed agreed with: "the Court agrees with Ms. Ring that BCYC is not entitled to Ms. Ring's entire medical file 'including general health records of routine vaccinations and other common sicknesses. These records are not relevant to the claims and defenses at issue in this case."[Citations omitted.] The subpoenas should be modified to focus on impairments specifically alleged as a basis for the claims at issue." (Order [DE 51].)

Even more importantly, there was no "failure" of the parties' counsel's conferencing about the proposed subpoenas. In fact, the parties reached a realistic compromise which BCYC chose to disregard in lieu of its pursuit of its scorch-the-earth discovery desires. The parties' counsel actually achieved a reasonable modification to the proposed subpoenas, which, if BCYC had accepted, would have allowed it to serve subpoenas on August 15, 2019. (*See* Exhibit 5.) Instead, BCYC left the onus on the Plaintiff to bring the matter to the Court's attention, after which BCYC sat back and did

Case 8:19-cv-00772-VMC-JSS   Document 60   Filed 11/04/19   Page 7 of 10 PageID 885

Case No. 8:19-cv-00772-VCM-JSS

nothing in the way of discovery or development of the substantive aspect of this case, except depose the Plaintiff, which it did only as an add-on *after* Plaintiff's counsel initiated and pursued the setting and scheduling of two of BCYC's witnesses.

Ironically, it is BCYC that has stymied and otherwise inhibited the Plaintiff's efforts to develop her case: first, by serving untimely discovery responses, and then by serving "responses" fraught with objections based upon unsubstantiated attorney-client privilege and backed by a flimsy, form-not-substance Privilege Log, both of which are the subject of the Plaintiff's pending (and timely) Motion to Compel BCYC's More Substantive Discover Responses and Incorporated Memorandum of Law [DE 56], which Plaintiff expressly incorporates herein. BCYC continues its stymieing of the Plaintiff's development of her case by ignoring Plaintiff's repeated requests for BCYC's Rule 30(b)(6) designee(s) deposition availability dates. (Letter and communication exchange repeating request for availability are collectively marked, attached, and incorporated herein as "Exhibit 6.") BCYC's hands are unclean.

And, unlike BCYC, even though the Plaintiff did not have BCYC's discovery responses in time for the depositions of BCYC's witnesses – as had been Plaintiff's counsel's intention when it planned and executed its discovery plan – Plaintiff's counsel did not cancel the depositions or otherwise throw up their hands in feigned defeat, as counsel was fully cognizant of the need to remain on track with the CMSO. If BCYC's Motion for Extensions is granted, the message sent is one contrary to not only the Local Rules and discovery practices in this District, but to the Eleventh Circuit as a whole: i.e., unilaterally cease all activity and case development if one encounters any obstacles or delays as there will be no consequence.

However, above all else the Court should consider when ruling on what might appear at first blush to be a simple and "reasonable" request for a thirty day extension of missed deadlines, is the hollowness of BCYC's claim that it needed subpoenaed medical records to comply with the CMSO.

The case stems from BCYC's refusal to allow the Plaintiff to be accompanied by her service animal into its clubhouse despite its receipt of a Verification of Medical Need from her physician. That Verification is, and to every pleading filed by Plaintiff, has been an Exhibit. (*See* DE 1-1, 27-2, and 47-2.) The point is, even before the instant lawsuit was filed, BCYC knew what Plaintiff's disability claims were and the physician who treated her. It is undisputed that Plaintiff provided to BCYC's Commodore/President Larry Brown on July 18, 2018, the Verification of Medical Need, which had been completed and executed by her treating physician and clearly elucidated Plaintiff's disability. (*See* DEs 1-1, 27-2, and 57-2.) This is not a case of a defendant who blindly has to guess as to a plaintiff's medical claims or medical treatment. BCYC could, and should, have proposed a subpoena of reasonable scope or otherwise agreed to one when it was offered, sought a CME and potential rebuttal disability expert long ago, sought to depose Plaintiff's treating provider, and otherwise sought relief from the existing CMSO long prior to the eve of its Expert Disclosure cut-off. As evidenced by its counsel's October 31, 2019, communication, it knows (and knew) enough about Plaintiff's disability claims to represent that the scope of its desired CME would be "limited to the alleged medical conditions that Ms. Ring is claiming are disabilities." (Exhibit 3.)  Contrary to BCYC's contention, there was nothing "precluding" it from seeking a CME or rebuttal expert previously, and most certainly not the now moot Motion to Quash.

The diligence of the moving party must be considered in determining whether there is good cause to extend a deadline. *See Jozwiak v. Stryker Corp.*, No. 6:09-cv-1985-Orl-19GJK, 2010 WL 743834, at *2 (M.D. Fla. Feb. 26, 2010).

In other words, the moving party **must** demonstrate it could not meet the deadline **despite** its diligent efforts. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); *Idearc Media Corp. v. Kimsey & Assocs., P.A.*, No. 807-CV-1024-T-17EAJ, 2009 WL 413531,

at *2 (M.D. Fla. Feb. 18, 2009).  Other than the Motion to Quash, BCYC offers no reason why it was unable to meet the deadlines it has already missed/will soon miss (i.e., initial disclosure, expert disclosure, discovery, and dispositive motion) or otherwise seeks extensions for in its Motion for Extensions. *FedEx Express*, No. 5:09-CV-85 (CAR), 2009 WL 1951059, at *7 (M.D. Ga. July 6, 2009) (denying motion to extend scheduling order deadline where, *inter alia*, "Counsel has not offered any explanation as to why he did not bring this motion before now").

## II. CONCLUSION

District courts have broad discretion when managing their cases in order to ensure that the cases move to a timely and orderly conclusion. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). Rule 16 requires a showing of good cause for modification of a court's scheduling order. Fed. R. Civ. P. 16(b)(4). "This good cause standard **precludes** modification *unless* the schedule cannot be met **despite** the diligence of the party seeking the extension*." Sosa v. Airprint Sys., Inc*., 133 F. 3d 1417, 1418 (11th Cir. 1998) (internal quotations and citations omitted; emphasis added).

The simple fact is that in the case *sub judice*, the Defendant can point to no due diligence and thus no good cause for modifying the CMSO. It tactically chose to eschew proposed subpoena modification, and then sat on its hands and did nothing, waiving only the Motion to Quash as an excuse to forego any diligence.

"The timetable established by the Case Management and Scheduling Order is binding upon the parties." *Payne v. Ryder Sys., Inc. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997).  "'The scheduling order is not a frivolous piece of paper, idly entered, which

can be cavalierly disregarded by counsel without peril.'" *Id.* (*quoting Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

BCYC should not now be rewarded for its dilatory practices and tactical manipulations.

Respectfully submitted,

| | |
|---|---|
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |
| **MARCY I. LAHART, P.A.** | **VENZA LAW, PLLC** |
| *s/ Marcy LaHart* | *s/ Denese Venza* |
| Marcy I. LaHart, Esq. | Denese Venza, Esq. |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| (352) 545-7001 | (561) 596-6329 |
| marcy@floridaanimallawyer.com | dvenza@venzalawpllc.com |
| Florida Bar No. 0967009 | Florida Bar No. 0599220 |

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on 4th day of November, 2019 a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: *s/ Denese Venza*
Denese Venza, Esq.