UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA RING,

    Plaintiff,

v.                                        Case No.: 8:19-cv-772-T-33JSS

BOCA CIEGA YACHT CLUB, INC.,

    Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant Boca Ciega Yacht Club, Inc.'s Motion to Dismiss the Second Amended Complaint and Strike Jury Trial Demand (Doc. # 48), filed on October 16, 2019. Plaintiff Samantha Ring filed a response in opposition (Doc. # 53) on October 25, 2019. For the reasons explained below, BCYC's Motion is granted in part and denied in part.

## I.   Background

### A.   Allegations of the Second Amended Complaint

According to the Second Amended Complaint, Ring is an avid sailor and joined Boca Ciega Yacht Club ("BCYC") as a member in 2007. (Doc. # 47 at ¶ 6). Ring alleges that she is "highly allergic" to bee stings and sunflower seeds and suffers from severe anxiety with panic attacks. (Id. at ¶ 4).

1

So, in 2015, Ring acquired a dog named Piper to assist her with her disabilities. (Id. at ¶¶ 7, 9-11). Ring alleges that Piper is a service animal under the ADA. (Id. at ¶ 8).

In July 2018, Ring provided "medical documentation of her disability-related need to be accompanied by Piper" to BCYC Commodore Larry Brown. (Id. at ¶ 17). Yet, in December 2018, Ring alleges that she received a "written reprimand" from BCYC for being in the clubhouse with Piper. (Id. at ¶ 41). BCYC informed Ring that it was a private club and requested that she cease bringing Piper to BCYC premises as it was against club rules. (Id. at ¶ 20; Doc. # 47-3).

On January 2, 2019,[1] Ring filed a signed and verified Charge of Discrimination with the Pinellas County Office of Human Rights (the "PCOHR"), alleging that BCYC had discriminated against her on the basis of her disability by failing to allow her service animal on BCYC's premises. (Doc. # 47 at ¶ 42; Doc. # 48-1).

Ring alleges that BCYC began to retaliate against her for filing the complaint with PCOHR, including fining her for bringing Piper to the clubhouse, "[t]argeting" Ring for

---

[1] The Charge of Discrimination is date stamped January 2, 2018, but Ring signed the document on December 28, 2018, and so it appears that the agency's staff inadvertently forgot to switch the stamp to reflect the new year.

emergency suspension of her membership, suspending Ring's membership "for reasons that were wholly pretextual," and lobbying other BCYC members to vote for Ring's expulsion. (Doc. # 47 at ¶ 44). BCYC expelled Ring in April 2019. (<u>Id.</u> at ¶ 44(i); Doc. # 47-6; Doc. # 48 at 2).

### B. <u>Administrative History</u>

As previously noted, Ring filed a formal Charge of Discrimination against BCYC with the PCOHR on January 2, 2019, alleging that BCYC discriminated against her on the basis of her disability by refusing to allow her service animal into the clubhouse. (Doc. # 48-1). Ring amended her administrative complaint in April 2019 to add charges of retaliation. (Doc. # 47 at ¶ 83; Doc. # 47-7 at 1).

According to an investigative report dated May 29, 2019, the PCOHR investigated Ring's claims of discrimination against BCYC (the "Investigative Report"). (Doc. # 47-7). At the end of the Investigative Report, under "Conclusions," the report's author wrote that, "based upon the available evidence, there is reasonable cause to believe that an unlawful act of discrimination based on disability . . . and retaliation has occurred." (<u>Id.</u> at 15).

On June 5, 2019, the PCOHR issued a letter of intent to BCYC's counsel, explaining that the agency had completed its

review of the final investigative report in Ring's complaint. (Doc. # 27 at 70).[2] The letter stated that "a determination will be issued that there is reasonable cause to believe that unlawful discrimination has occurred. Therefore, this letter is an offer of a final opportunity for you to engage in conciliation to resolve this matter." (Id.).

The letter warned that if conciliation efforts were not successful, "a charge of discrimination will be formally entered and a determination of Reasonable Cause will be issued." (Id.). The PCOHR would then forward the investigative file to the Florida Division of Administrative Hearings with a request to schedule an administrative hearing. (Id.).

It appears that the parties did attempt a conciliation on August 2, 2019, that was not successful. (Doc. # 47 at ¶ 87; Doc. # 38-1). On August 7, 2019, Ring's administrative complaint went before the Florida Division of Administrative Hearings (the "DOAH"). (Doc. # 42-1). On August 20, 2019, Ring filed a Notice of Voluntary Dismissal of her case before the DOAH. (Doc. # 42-2). Accordingly, the administrative law

---

[2] Ring filed her Amended Complaint (Doc. # 27) as one document, including all attached exhibits. Accordingly, this Order provides citations to the overall page number within the omnibus document.

judge closed Ring's case before the DOAH on August 23, 2019, and "relinquished" jurisdiction to the PCOHR. (Doc. # 42-3).

C.  **Procedural History**

Ring initiated the instant action in federal court on March 29, 2019, asserting claims against BCYC for failure to make reasonable modifications and retaliation under Title III of the Americans with Disabilities Act (the ADA). (Doc. # 1). On April 19, 2019, BCYC answered the original complaint. (Doc. # 12).

On June 25, 2019, Ring filed an Amended Complaint, again raising a claim under Title III of the ADA for failure to make reasonable modifications (Count I) and a claim for retaliation under the ADA (Count II), both against BCYC. (Doc. # 27 at 13-18). Ring also added a claim against the City of Gulfport for allegedly violating Title II of the ADA (Count III). (Id. at 19-24). And she added a claim against BCYC for discrimination in violation of the Florida Civil Rights Act ("FCRA") (Count IV). (Id. at 24-25).

On July 9, 2019, BCYC filed a motion to dismiss Count IV of the Amended Complaint and strike Ring's demand for a jury trial. (Doc. # 28). On July 23, 2019, Ring responded to the motion and filed a notice of voluntary dismissal of her claims

against the City of Gulfport, Count IV, and her demand for a jury trial. (Doc. ## 29, 30).

On July 24, 2019, this Court dismissed the claims against the City of Gulfport without prejudice and dismissed Count IV and Ring's jury-trial demand without prejudice. (Doc. # 31). The Court then denied BCYC's motion to dismiss as moot. (Doc. # 32).

On August 7, 2019, BCYC filed a motion for reconsideration of this Court's July 24, 2019, orders, which this Court granted in part. (Doc. ## 33, 46). Recognizing that Ring had used the incorrect procedural mechanism to amend her complaint, the Court set aside its July 24, 2019, orders but, given that BCYC did not file a response in opposition to Ring's motion to file a Second Amended Complaint, granted Ring leave to amend her complaint. (Doc. # 46).

Ring filed her Second Amended Complaint on October 8, 2019. (Doc. # 47). Based on the allegations described above, Ring now brings four claims against BCYC: failure to make reasonable modifications under the ADA (Count I); retaliation in violation of the ADA (Count II); discrimination in violation of the FCRA (Count III); and "negligence per se" for violation of Fla. Stat. § 413.08 (Count IV). (Id. at 7-14). Ring seeks declaratory and injunctive relief and seeks

6

damages with respect to Counts III and IV. (Id. at 9-10, 13, 14, 15-16). She has also demanded a jury trial. (Id. at 17).

On October 16, 2019, BCYC moved to dismiss the Second Amended Complaint in its entirety. (Doc. # 48). On October 25, 2019, Ring responded in opposition. (Doc. # 53). This Court heard oral argument on the Motion on October 28, 2019. (Doc. # 54). The Motion is now ripe for review.

## II.  Legal Standard

### A.  Rule 12(b)(1)

Federal courts have limited jurisdiction and therefore only possess power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Wiliamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts cannot consider claims for which they lack subject-matter jurisdiction. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

Federal Rule of Civil Procedure 12(b)(1) provides for a party, by motion, to assert the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). This defense may be raised at any time. See Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 571 (2004). The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. Underwriters at Lloyd's, London v. Osting-Schwinn,

613 F.3d 1079, 1085 (11th Cir. 2010). Where, as here, a defendant raises a facial attack to the existence of subject-matter jurisdiction, the issue becomes whether the complaint sufficiently alleges a basis of subject-matter jurisdiction. McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007).

### B.   Rule 12(b)(6)

When considering a motion to dismiss brought under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). In addition, courts are not "bound to

accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

**III. <u>Analysis</u>**

In its Motion, BCYC raises three arguments for why the Second Amended Complaint should be dismissed. First, BCYC argues that Ring has no standing to assert claims for injunctive relief under Title III of the ADA. (Doc. # 48 at 1, 5-8). Second, BCYC claims that Ring's FCRA claim is due to be dismissed with prejudice because (1) Ring has failed to exhaust her administrative remedies under that statute, and (2) BCYC does not qualify as a place of public accommodation under the FCRA. (<u>Id.</u> at 1, 8-16). Relatedly, BCYC maintains that Fla. Stat. § 413.08 does not expand the definition of "public accommodation" into the "narrow confines" of the FCRA. (<u>Id.</u> at 16-17, 20-21). Finally, BCYC submits that Fla. Stat. § 413.08 does not provide a private right of action. (<u>Id.</u> at 1, 17-20).

**A. <u>Standing</u>**

The question of standing is an "essential and unchanging part of the case-or-controversy requirement of Article III."

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). Plaintiffs must satisfy three requirements to have standing under Article III: (1) "injury-in-fact"; (2) "a causal connection between the asserted injury-in-fact and the challenged action of the defendant"; and (3) "that the injury will be redressed by a favorable decision." <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001) (internal quotation marks omitted) (citing <u>Lujan</u>, 504 U.S. at 560–61).

The "injury-in-fact" demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." <u>Wooden v. Bd. of Regents of Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1283 (11th Cir. 2001). Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows "a real and immediate — as opposed to a merely conjectural or hypothetical — threat of *future* injury." <u>Shotz</u>, 256 F.3d at 1081; <u>Wooden</u>, 247 F.3d at 1284 (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983)).

In this case, Ring seeks injunctive relief, which is the only form of relief available to plaintiffs suing under Title

III of the ADA. (Doc. # 47 at 9-10, 15-16); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1329 (11th Cir. 2013). Therefore, to have standing, Ring must show past injury and a real and immediate threat of future injury.

The Eleventh Circuit has held that, when determining whether a plaintiff has standing to sue for prospective injunctive or declaratory relief, "Article III standing must be determined as of the time at which the plaintiff's complaint is filed." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir. 2003); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation."). What's more, when an amended complaint is filed, "it is necessary that [plaintiff] possessed Article III standing on this later date" also, but where the original and the amended complaint contain identical allegations, the amended complaint may relate back to the date of the original complaint for standing purposes. Focus on the Family, 344 F.3d at 1275-76.

Here, on March 29, 2019 – the date that Ring commenced this lawsuit – she was still a member of BCYC. On that date, she could have arrived at the club as a member and, because

Ring had been previously warned that Piper was not welcome on the BCYC premises, she and/or her service dog would likely have been denied access to the BCYC clubhouse. See (Doc. # 47 at ¶¶ 14-16, 20, 41, 44(b), 44(e), 44(h)). Indeed, Ring alleged in her original Complaint that BCYC knew that Ring wished to have Piper accompany her on visits to the BCYC clubhouse and that BCYC "steadfastly refuses" to allow Piper to accompany her. (Doc. # 1 at ¶¶ 13-14). Thus, at the time that Ring's original Complaint was filed, there was a real and immediate threat of future injury. See Shotz, 256 F.3d at 1081; Focus on the Family, 344 F.3d at 1275. Ring clearly had standing to pursue injunctive relief under the ADA at the time she filed her original Complaint.

However, Ring was expelled from BCYC membership in April 2019. (Doc. # 47 at ¶ 44(i); Doc. # 47-6; Doc. # 48 at 2). And she filed her Second Amended Complaint in October 2019, well after she had been expelled from membership. The question then becomes whether the allegations in Ring's Second Amended Complaint relate back to the March 29, 2019, filing of her original Complaint. See Focus on the Family, 344 F.3d at 1275-76.

The touchstone for determining whether Ring's claims relate back is Federal Rule of Civil Procedure 15(c). That

rule provides that an amendment to a pleading will relate back to the date of the original pleading when, among other things, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

With respect to Ring's ADA claims, the Court has carefully compared the two pleadings, and while the allegations in her original Complaint are not identical to those in the Second Amended Complaint, they are very similar and the claims are completely unchanged. Compare (Doc. # 1) with (Doc. # 47). Under these circumstances, the Court concludes that the requirements of Rule 15(c)(1)(B) are satisfied. See Arce v. Garcia, 434 F.3d 1254, 1264 n.24 (11th Cir. 2006) (finding claims in second amended complaint related back where they "were closely related, if not identical, to the claims asserted in [the] initial complaint").

The allegations are sufficiently similar to allow Ring's Second Amended Complaint to "relate back" to the date of her original Complaint, despite her intervening expulsion from BCYC. See Focus on the Family, 344 F.3d at 1275-76 (where plaintiff initially alleged that it would suffer First

Amendment injury because it was not permitted to advertise for a conference to be held on a certain future date, and the amended complaint making the same allegation was not filed until after the date of the conference had past, holding an amended complaint "plainly relate[d] back" under Rule 15(c)); see also Harvard v. Inch, No. 4:19-cv-212-MW/CAS, 2019 WL 5587314, at *5 (N.D. Fla. Oct. 24, 2019) (determining, in case where inmates sought injunctive relief, that inmates had standing when they filed their original complaint because they were still in isolation, and the fact that amended complaint pleaded that they had since been released from isolation did not "strip them of standing they would otherwise have at the time of filing suit" where the challenged policies and practices had not changed); Eternal Word Television Network, Inc. v. Sebelius, 935 F. Supp. 2d 1196, 1214-15, 1214 n.16 (N.D. Ala. 2013) (holding that the amended complaint would relate back to the date of the original complaint for standing purposes where the amended pleading added just a few paragraphs, but the claim was essentially the same); Mortland v. Northlake Mall, LLC, No. 1:13-CV-1151-TWT, 2013 WL 6881694, at *3 n.3 (N.D. Ga. Dec. 31, 2013) (in ADA case seeking injunctive relief, holding that even where injunctive relief "appear[ed] futile" at that time, plaintiff had

standing if an injunction could have provided relief at the time he filed his complaint).

Under these circumstances, the question becomes one of mootness, not standing. See Friends of the Earth, 528 U.S. at 189 (describing mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)") (internal quotation marks omitted); Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1267 (11th Cir. 2001) ("[A] party's standing to sue is generally measured at the time of the complaint, with the effect of subsequent events generally analyzed under mootness principles.").

"[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" United States v. Fla. Azalea Specialists, 19 F.3d 620, 622 (11th Cir. 1994). Thus, "if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the [case] must be dismissed." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal quotations and citation omitted). A

defendant has a heavy burden in seeking to have a case dismissed as moot – it must show that the Court cannot grant "any effectual relief" whatsoever, even partial relief, to the plaintiff. See Calderon v. Moore, 518 U.S. 149, 150 (1996).

BCYC cannot make this showing. As the parties agreed at the hearing on this Motion, this Court could eventually grant Ring many forms of injunctive relief, including reinstatement to membership at BCYC. See (Doc. # 47 at 9-10, 15-16) (seeking injunctive relief in the form of an order "placing Ring in the position she would have been in had there been no violation of her rights" and a preliminary injunction ordering BCYC to "immediate[ly] [reactivate] Ring's membership in BCYC . . . and [grant her] unfettered access to all parts of BCYC's premises").

For the foregoing reasons, Ring has standing to pursue her ADA claims, and her claims are not moot.

**B.** **Failure to exhaust administrative remedies under the Florida Civil Rights Act**

The general purpose of the FCRA is to secure for all people within the state of Florida freedom from discrimination based on numerous factors, including "handicap." Fla. Stat. § 760.01. The Florida Legislature has

directed that the statute be "liberally construed to further the general purposes" of the law. Id. The FCRA also created the Florida Commission on Human Relations (the "FCHR"), which is charged with, among other things, promoting fair treatment and equal opportunity for all persons and endeavoring to eradicate discrimination. Id. §§ 760.03, 760.05.

The FCRA provides that: "Any violation of any Florida statute making unlawful discrimination because of . . . handicap . . . in the areas of education, employment, housing, or public accommodations gives rise to a cause of action for all relief and damages described in s. 760.11(5), unless greater damages are expressly provided for." Id. § 760.07. The FCRA further provides that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." Id. § 760.08.

A plaintiff's exhaustion of her administrative remedies is a jurisdictional prerequisite to filing an action under the FCRA. Jones v. Bank of Am., 985 F. Supp. 2d 1320, 1324–25 (M.D. Fla. 2013). To exhaust administrative remedies under

the FCRA, a plaintiff must satisfy the requirements of Fla. Stat. § 760.11.  Id. at 1325.

Section 760.11 sets forth the procedure for obtaining administrative and civil remedies.  Under the FCRA, a person who believes they have been discriminated against in violation of the statute can file a complaint with the FCHR within 365 days of the alleged violation.  Id. § 760.11(1). The law also provides that, "[i]n lieu of filing the complaint with the [FCHR], a complaint under this section may be filed with the federal Equal Employment Opportunity Commission or with any unit of government of the state which is a fair-employment-practice agency[.]" Id. If there is a date stamp on the face of the complaint, that is treated as the date of filing.  Id. "The date the complaint is filed with the commission for purposes of this section is the earliest date of filing with the Equal Employment Opportunity Commission, the fair-employment-practice agency, or the commission." Id.

The statute contemplates that the FCHR will then either undertake an investigation of the complaint's charges itself or will refer the investigation to another agency.  See Id. § 760.11(2), (3).

The statute provides that, after an investigation has been conducted, one of three things will happen:

(1) The FCHR determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of law, in which case the aggrieved party may either bring a civil action in court or request an administrative hearing;

(2) The FCHR determines there is no reasonable cause to support the complaint, and dismisses it. The aggrieved party can then request an administrative hearing as to this determination; or

(3) "In the event that the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days of the filing of the complaint, an aggrieved person may proceed . . . as if the [FCHR] determined that there was reasonable cause."

Id. § 760.11(3), (4), (7), (8).

The FCRA also discusses what happens when a civil action is brought for violation of its provisions. Courts may issue injunctions and orders providing affirmative relief and may also award compensatory damages, punitive damages, and attorneys' fees. Id. § 760.11(5). Complainants are entitled to a trial by jury when they seek compensatory or punitive damages. Id.

With this understanding of the FCRA in mind, the Court now addresses BCYC's arguments. First, BCYC principally argues that "[a] plain reading of the FCRA strongly supports that the [FCHR] is the only agency ultimately tasked with entering a determination on the Charge for the purposes of ensuring that a claimant's administrative remedies are

exhausted." (Doc. # 48 at 10). Thus, it claims, the outcome of any FCRA administrative investigation is "dictated by the actions or inaction of the [FCHR], not the actions or inaction of any other agency qualified to investigate a Charge, including the PCOHR." (Id.). Relying on certain emails showing that Ring never filed a Charge of Discrimination directly with the FCHR, and that agency accordingly never entered a determination on Ring's Charge, BCYC submits that she has failed to administratively exhaust her remedies. (Id. at 11).

Second, BCYC argues that if Ring had waited the full 180 days contemplated by the statute before filing suit without a determination by the FCHR, see Section 760.11(8), she would have been entitled to file her lawsuit. (Id. at 10-11). It argues that that deadline ran on July 1, 2019, and Ring filed her amended complaint on June 25, 2019, just six days shy of the deadline. (Id. at 11).

Third, BCYC claims that the FCRA does not offer Ring "another bite at the apple" because, once she filed this lawsuit, the FCHR was divested of jurisdiction over her claim, her administrative remedies were never exhausted, and her claims can never accrue. (Id. at 11-12). Finally, BCYC points out Ring's voluntary dismissal of her case before the DOAH,

writing that "[a]bsent a ruling on the merits by DOAH, the PCOHR's findings do not and cannot constitute a final agency decision, as BCYC was deprived of its due process right to challenge the agency's findings." (Id. at 11). Thus, according to BCYC, Ring's claims "never accrued" and are due to be dismissed with prejudice. (Id. at 8).

In her response, Ring argues that the FCRA allowed her to file an administrative complaint with the PCOHR "in lieu of" filing her complaint with the FCHR, and that she has exhausted her administrative remedies because the PCOHR made a finding in her favor. (Doc. # 53 at 10-11). Taking another tack, Ring argues that "as a matter of law Ring's only condition precedent to bringing a FCRA claim was that she filed an administrative complaint and gave the investigating agency 180 days to do its job." (Id. at 12).

The Court is not persuaded by BCYC's first argument that a "plain reading" of the statute demonstrates that "the [FCHR] is the only agency ultimately tasked with entering a determination on the Charge" for purposes of administrative exhaustion and that the outcome of any FCRA claim is "dictated by the actions or inaction of the Committee." Rather, a plain reading of Fla. Stat. § 760.11 demonstrates that, once a complainant files a charge with either the FCHR, the Equal

Employment Opportunity Commission ("EEOC"), or a fair-employment-practice agency, the Commission **may** then refer such complaint to another state agency for an investigation. See Fla. Stat. § 760.11(1), (2). At the conclusion of that investigation, the matter will be referred back to the FCHR for the Commission to make a determination on the charge. Id. § 760.11(2)-(4).

But that is not what happened here. The parties agree that Ring filed her administrative complaint only with the local fair-employment-practice agency, the PCOHR. This undisputed fact also serves to undermine BCYC's second argument — that Ring's June 2019 filing of her Amended Complaint was fatally premature because she failed to wait 180 days between filing her administrative complaint and failing to receive any determination from the FCHR. It is illogical to expect that Ring would have received any determination from the FCHR when she never filed a complaint with that agency, as was her prerogative under the FCRA. Second, Ring did not have to wait for agency inaction because an agency had acted – by the time she filed her Amended Complaint in June 2019, she had the PCOHR's finding of reasonable cause in hand.

Ring's decision to file only with PCOHR does lead, however, to a perplexing problem. While courts have recognized the existence of a work-share agreement between the FCHR and the EEOC which effectively treats a complaint filed with the EEOC as dual-filed with the FCHR, there is no evidence before the Court of a similar work-share agreement between the PCOHR and the FCHR. See, e.g., Giakoumakis v. Maronda Homes, Inc., of Florida, No. 5:08-cv-487-Oc-10GRJ, 2010 WL 557750, at *1 (M.D. Fla. Feb. 12, 2010); Mason v. K Mart Corp., 1 F. Supp. 2d 1333, 1336 (M.D. Fla. 1998).

Section 760.11 allows complainants to file a complaint with a fair-employment-practice agency "[i]n lieu of" filing such a complaint with the FCHR, but the remainder of the statute describes only how procedures before the FCHR progress. See Fla. Stat. § 760.11. It provides no direction as to how a complainant filing before only a local agency may properly exhaust her administrative remedies. The parties do not point to, nor could this Court find, any cases describing the correct procedures for administrative exhaustion when a complainant files only with a local agency.

The Florida Supreme Court, in interpreting the FCRA, has stated that courts should be guided "by the stated statutory purpose of liberally construing the FCRA in favor of a remedy

for those who are victims of discrimination, and the companion principle that requires [courts] to narrowly construe statutory provisions that restrict access to the courts." Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So. 2d 891, 897 (Fla. 2002). In Woodham, the Florida Supreme Court was tasked with determining whether a finding from the EEOC that it was "unable to conclude that the information obtained establishes" a statutory violation operated as a finding of "no reasonable cause" under the FCRA, Fla. Stat. § 760.11(7). Id. at 89-95; see also Fla. Stat. § 760.11(7) ("If the commission determines that there is not reasonable cause to believe that a violation of the [FCRA] has occurred, the commission shall dismiss the complaint [and the aggrieved person may then request an administrative hearing].").

To settle this issue, the Court focused on the Legislature's requirement in Section 760.01(3) that the protections of the FCRA are to be "liberally construed to further the general purposes stated in this section." Woodham, 829 So. 2d at 894. The Florida Supreme Court reasoned that such construction is based on the remedial purposes of the FCRA and requires a "specific finding of lack of reasonable cause before an individual is stripped of her right of access to the courts for redress against discrimination."

Id. at 894, 896 (citing Cisko v. Phoenix Med. Prods., Inc., 797 So. 2d 11, 13 (Fla. 2d DCA 2001) (internal quotation marks omitted)). Under this public policy, the Court stressed that "because [Section] 760.11(7) purports to abridge an individual's right to access to the courts, that section must be narrowly construed in a manner that favors access." Woodham, 829 So. 2d at 897. The Florida Supreme Court concluded that the language of Section 760.11(7) requires "a specific determination 'that there is not reasonable cause' to believe a violation occurred." Id.

In her Second Amended Complaint, Ring alleges that on January 2, 2019, she filed an administrative complaint against BCYC with the PCOHR, which the parties agree is a fair-employment-practice agency for purposes of the FCRA. (Doc. # 47 at ¶¶ 83-84; Doc. # 48 at 9). On May 29, 2019, the PCOHR issued an Investigative Report containing a finding of reasonable cause in her favor.[3] (Doc. # 47 at ¶ 86; Doc. # 47-7). Ring alleges that "[a]ll conditions precedent to this lawsuit have occurred or been performed." (Id. at ¶ 46).

---

[3] The parties agreed at the hearing that there is nothing in the record demonstrating that PCOHR ever issued another document that was a formal finding of reasonable cause.

This case presents a close call on the issue of exhaustion of administrative remedies. But in the absence of more explicit guidance from the statute or case law, the Court is guided by the Florida Supreme Court's directive that courts should be guided "by the stated statutory purpose of liberally construing the FCRA in favor of a remedy for those who are victims of discrimination, and the companion principle that requires [courts] to narrowly construe statutory provisions that restrict access to the courts." Woodham, 829 So. 2d at 897.

Here, Ring received a reasonable-cause determination in her favor after she filed an administrative complaint with a local fair-employment-practice agency, which filing is acceptable under the FCRA. Fla. Stat. § 760.11(1). Under these circumstances, a finding that the courthouse doors are closed to Ring would run counter to the public policy purposes underpinning the FCRA. See Woodham, 829 So. 2d at 896 (agreeing with a state court case requiring a "specific finding of lack of reasonable cause before an individual is stripped of her right of access to the courts for redress against discrimination"). Thus, under a liberal construction of the FCRA, the Court is persuaded that the PCOHR acted on behalf of the FCHR in issuing its May 29, 2019, reasonable-

cause determination in Ring's favor. A similar reasonable-cause determination by the FCHR would have automatically given Ring the right to bring a civil suit under the FCRA. Fla. Stat. § 760.11(4).

And while BCYC emphasizes that Ring voluntarily dismissed her action before the DOAH, despite such hearing being part of the administrative process with the PCOHR, the Court is unpersuaded that the dismissal of the DOAH hearing deprives the Court of jurisdiction. Notably, while the PCOHR automatically refers complaints to the DOAH, the FCRA does not require a complainant who has received a favorable reasonable cause determination to go through an administrative hearing before bringing a civil action. The Court will not impose that requirement on Ring now, in the absence of clear statutory or other legal authority.

For these reasons, Ring has complied with the requirements of Section 760.11 and exhausted her administrative remedies under the FCRA.[4]

---

[4] In making this determination, the Court considered all of the record documents referenced in this Order. Generally, if matters outside the pleadings are presented as part of a motion to dismiss under Rule 12(b)(6), the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, the Court properly relied on these documents in considering this Motion to Dismiss for two reasons. First, exhaustion of administrative remedies is a

### C. Whether BCYC is a place of "public accommodation" within the meaning of the FCRA

BCYC also argues that the FCRA claim is due to be dismissed because BCYC is not a place of "public accommodation," and as such falls outside the reach of the FCRA. (Doc. # 48 at 12-16).

The FCRA provides that: "Any violation of any Florida statute making unlawful discrimination because of . . . handicap . . . in the area[] of . . . public accommodations gives rise to a cause of action for all relief and damages described in s. 760.11(5), unless greater damages are expressly provided for." Fla. Stat. § 760.07.

The statute defines "public accommodations" as:

> places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments. Each of the following establishments which serves the public is a place

jurisdictional prerequisite, and courts may rely on extrinsic documents to determine whether they have subject-matter jurisdiction. See Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) (courts may look beyond the pleadings when addressing motion to dismiss for failure to exhaust remedies). Second, consideration of these documents was central to Ring's FCRA claim. See SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

of public accommodation within the meaning of this section:

 (a) Any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than four rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his or her residence.

 (b) Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment, or any gasoline station.

 (c) Any motion picture theater, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment.

 (d) Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.

Fla. Stat. § 760.02(11). The statute further provides that:

The term "public accommodations" does not include lodge halls or other similar facilities of private organizations which are made available for public use occasionally or periodically.

Fla. Stat. § 760.07.

In her Second Amended Complaint, Ring alleges that BCYC is a place of public accommodation because the City of

Gulfport owns the land on which BCYC sits, BCYC is open to the public for "numerous events" throughout the year, non-members are "regularly permitted access," and BCYC is not selective in allowing new members. (Doc. # 47 at ¶¶ 13, 21-40, 72-73).

For its part, BCYC argues that if the Florida Legislature had meant to include marinas or private sailing clubs within the purview of the statute, they would have done so. (Doc. # 48 at 13-14). BCYC disputes that just because it sells food and drink to members and offers some recreation and entertainment to its members, it is not like a restaurant, cafeteria, or theater. (Id.). BCYC admits that the phrase "private organizations," as used in Section 760.07, is not defined by the FCRA and there are no reported Florida cases discussing the "private organizations" exception, but it argues that BCYC clearly qualifies as such a private organization under the plain meaning of the term. (Id. at 15).

Taking the factual allegations alleged in Ring's Second Amended Complaint in the light most favorable to Ring, the Second Amended Complaint plausibly alleges that BCYC falls

within the definition of a "public accommodation."[5] To the
extent BCYC raises factual arguments to the contrary, such
factual disputes are better resolved on summary judgment. See
Cohan v. Marco Island Marina Ass'n, Inc., 56 F. Supp. 3d 1254,
1257 (M.D. Fla. 2014) (determining that issue of whether
marina qualified for ADA exemption as a private, members-only
club could not be resolved at motion to dismiss phase).

### D. Ring's Cause of Action under Fla. Stat. § 413.08

Ring seeks to bring a claim for "negligence per se" for
violation of Fla. Stat. § 413.08. (Doc. # 47 at 13-14). That
statute provides in relevant part:

> An individual with a disability is entitled to full
> and equal accommodations, advantages, facilities,
> and privileges in all public accommodations. A
> public accommodation must modify its policies,
> practices, and procedures to permit use of a
> service animal by an individual with a disability.
> . . .
> An individual with a disability has the right to be
> accompanied by a service animal in all areas of a
> public accommodation that the public or customers
> are normally permitted to occupy.

---

[5] The Eleventh Circuit has held that parties "may not import
[Section] 413.08's broader definition of 'public
accommodation' into the FCRA." See Sheely v. MRI Radiology
Network, P.A., 505 F.3d 1173, 1205 (11th Cir. 2007)
(explaining that Section 760.02 of the FRCA "expressly states
that its narrow definition of 'public accommodation' applies
to [Section] 760.07").

Fla. Stat. § 413.08(2), (3).  Importantly, Section 413.08
provides only for criminal penalties. See Id. § 413.08(4)
(stating that whoever violates the statute commits a second-
degree misdemeanor and must perform community service).

Recognizing this, Ring argues that a cause of action for
negligence per se is created when a penal statute is designed
to protect a certain class of persons from a particular type
of harm. (Doc. # 47 at ¶ 95). She claims that, in enacting
Section 413.08, the Florida Legislature imposed a "statutory
duty of care" on places of public accommodation – like BCYC
– to allow disabled persons equal access to their facilities
and to be accompanied by their service animals. (Id. at ¶¶
89-91, 94, 97).

Outside of the context of public employment, no court
has yet recognized a private right of action under Fla. Stat.
§ 413.08. See Zorick v. Tynes, 372 So. 2d 133, 141 (Fla. 1st
DCA 1979). In fact, courts have refused to recognize a private
cause of action under Section 413.08.  See Johnson v. Yashoda
Hosp., Inc., No. 2:15-cv-611-FtM-99CM, 2016 WL 6681023, at *3
(M.D. Fla. Nov. 14, 2016) (declining to extend Zorick to
authorize other types of private anti-discriminatory actions
directly under the statute).

32

Rather, the FCRA, with its broad language, provides the mechanism to obtain private relief and damages under Section 413.08. <u>See</u> Fla. Stat. § 760.07 (providing that "**[a]ny violation of any Florida statute** making unlawful discrimination . . . gives rise to a cause of action" for damages (emphasis added)); <u>see also</u> <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1204-06 (11th Cir. 2007) (implicitly recognizing that a violation of Section 413.08 can be enforced through an FCRA cause of action); <u>Johnson</u>, 2016 WL 6681023, at *3 (stating that Section 413.08 is enforceable through the FCRA).

Here, Ring's Second Amended Complaint alleges, as part of her FCRA claim, a violation of Section 413.08(3)'s directive that disabled individuals have the right to be accompanied by a service animal in all areas of public accommodation that the public or customers are normally permitted to occupy. (Doc. # 47 at ¶ 74). Thus, Ring may bring a private cause of action for violations of Section 413.08 under the FCRA, but she may not bring a private cause of action under Section 413.08 itself. <u>See</u> <u>Johnson</u>, 2016 WL 6681023, at *3.

Although Ring's counsel readily admitted at the hearing on BCYC's Motion that there is no case law supporting her

novel negligence per se theory, the Court will discuss it in the interest of thoroughness. Negligence per se exists if there is a violation of a strict liability statute or rule designed to protect a "certain class of persons from their inability to protect themselves, such as one prohibiting the sale of firearms to minors," or a violation of a statute or rule which "establishes a duty to take precautions to protect a particular class of persons who are unable to protect themselves from a particular injury or type of injury." <u>See deJesus v. Seaboard Coast Line R.R. Co.</u>, 281 So. 2d 198, 200–01 (Fla. 1973); <u>see</u> <u>also</u> <u>Hesterly v. Royal Caribbean Cruises Ltd.,</u> 515 F. Supp. 2d 1278, 1287 n.6 (S.D. Fla. 2007). When a statute is silent as to whether it allows for a private cause of action, such a claim can only survive when the statute evidences legislative intent to create a private cause of action. <u>Zarrella v. Pac. Life Ins. Co.</u>, 755 F. Supp. 2d 1218, 1228 (S.D. Fla. 2010) (citing <u>Murthy v. N. Sinha Corp.</u>, 644 So. 2d 983, 985 (Fla. 1994)). Federal courts "should be particularly reluctant to read private rights of action in state laws where state courts and state legislatures have not done so." <u>Id.</u> (internal quotation marks and alteration omitted).

Section 413.08 is part of broader social welfare laws entitled "blind services program." The stated purpose of the act is to "encourage and assist blind and other severely handicapped individuals to achieve maximum personal independence through useful, productive, and gainful employment by assuring an expanded and constant market for their products and services, thereby enhancing their dignity and capacity for self-support and minimizing their dependence on welfare and need for costly institutionalization." Fla. Stat. § 413.032.

There is nothing in Section 413.08 evidencing legislative intent to create a private right of action. Nor does Ring's claim implicate the Florida Legislature's stated reasons for enacting the social welfare laws under which Section 413.08 falls. See Fla. Stat. § 413.032. Thus, Ring's negligence per se claim must be dismissed. Further, because a private right of action does not exist under Section 413.08, any amendment of this claim would be futile, and so Count IV of Ring's Second Amended Complaint must be dismissed with prejudice. See Amato v. Mortg. Inv'rs Corp. of Ohio, Inc., No. 5:12-cv-148-Oc-10PRL, 2013 WL 12204325, at *4 (M.D. Fla. Mar. 19, 2013) (explaining that, because there was no set of facts that could be alleged which would permit a private cause

of action as sought by plaintiff, amendment would be futile and dismissal with prejudice was appropriate).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Boca Ciega Yacht Club, Inc.'s Motion to Dismiss the Second Amended Complaint and Strike Jury Trial Demand (Doc. # 48) is **GRANTED** in part and **DENIED** in part.

(2) Count IV of Plaintiff's Second Amended Complaint is **DISMISSED WITH PREJUDICE.** All other Counts survive.

(3) BCYC's Answer to the Second Amended Complaint is due fourteen days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u> day of November, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE