UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA RING,

       Plaintiff,                          Case No. 8:19-cv-00772-VCM-JSS

vs.

BOCA CIEGA YACHT CLUB, INC.,

       Defendant.

_____/

## THIRD AMENDED COMPLAINT

COMES NOW, Plaintiff, SAMANTHA RING, and sues Defendant, BOCA CIEGA YACHT CLUB, INC., alleging as follows:

### JURISDICTION & VENUE

1. This is a civil action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et seq.*

2. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the ADA. Further, this Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) as the events that give rise to this cause of action arose in this District.

### PARTIES

4. Plaintiff SAMANTHA RING ("RING") is a resident of Pinellas County, Florida. RING is highly allergic to bee stings and sunflower seeds and also suffers severe anxiety with panic attacks. RING is an individual with a disability under 42 U.S.C. §12102(a), 28 CFR §

1

36.104, and Fla. Stat. § 760.22(7) because her physical and/or mental impairments substantially limit one or more of her major life activities.

5. Defendant BOCA CIEGA YACHT CLUB, INC. ("BCYC" or "DEFENDANT") is a Florida Not For Profit Corporation which operates a sailing club and marina at 4600 Tifton Dr. South, Gulfport, Florida 33711.

## FACTUAL ALLEGATIONS

6. RING, an avid sailor, has been a member of BCYC since 2007.

7. In August of 2015, RING obtained a dog named "Piper." Piper is a border collie mix and has been individually trained to do work and perform tasks for the benefit of RING which assist RING with her specific disabilities.

8. Piper is a "service animal" under the ADA and 28 CFR § 36.104.

9. As a result of her disability, RING requires Piper's presence to assist her in outdoor or exposed venues.

10. Piper warns RING of the presence of bees and catches and kills bees if they get close to RING.

11. Additionally, Piper seeks help if RING is unable to use her "EpiPen"[1] during an allergy attack or other incapacitation triggered by RING's disability. Piper also anticipates oncoming panic attacks and interrupts anxiety-related behaviors so that the panic attacks do not escalate.

12. In addition to being trained to perform disability-related tasks, Piper has earned the Canine Good Citizen title from the American Kennel Club.

13. CITY OF GULFPORT owns the land upon which BCYC's marina and clubhouse are

---

[1] The EpiPen is medication and a medication administration device used in emergencies to quickly treat very serious allergic reactions to insect stings/bites, foods, drugs, and other substances. One of its active ingredients is epinephrine which acts quickly to improve breathing, stimulate the heart, raise a dropping blood pressure, reverse hives, and reduce swelling of the face, lips, and throat.

2

located, and leases the clubhouse and parking area to BCYC for $1.00 per year, and provides 56 wet slips and 50 dry storage slips for the exclusive use of BCYC members. (The lease is attached, marked, and incorporated herein as "Exhibit A.")

14. BCYC is aware that Piper is a service animal that provides disability-related assistance to RING.

15. BCYC is aware that RING wished to be accompanied by Piper when RING used the BCYC clubhouse.

16. BCYC steadfastly refused to allow RING to be accompanied by Piper when RING used or went to the BCYC clubhouse.

17. On July 16, 2018, RING provided medical documentation of her disability-related need to be accompanied by Piper to BCYC Commodore Larry Brown. (The 07/15/2018 "Service Animal/Medical Need Letter" from Andres Santayana, M.D., is attached, marked, and incorporated herein as "Exhibit B.")

18. BCYC recognized that the provision of confidential medical documentation was RING's request for accommodation of her disability-related need to be accompanied by Piper.

19. In response, Commodore Larry Brown suggested that RING put on a demonstration of Piper's skills, after which the BCYC Board of Directors would decide whether or not RING required a service animal.

20. Instead of ceasing its discriminatory actions after being provided medical documentation of RING's disability-related need for her service animal, BCYC informed RING that BCYC is exempt from the ADA because it is a "private club" and is therefore free to exclude service animals from its leased premises. (*See* 12/23/2018 "Written Reprimand & Private Club is a Free Pass" Letter, marked, attached, and incorporated herein as "Exhibit C.")

21. BCYC is not a "private club" for purposes of being exempt from the ADA because, *inter alia*, BCYC operates on public land, is not selective regarding its members, charges minimal dues compared to organizations that have been found to be exempt, and actively recruits new members from the general public.

22. BCYC is a place of public accommodation whose operations affect commerce and fall within at least one of the designated categories concerning facilities operated by private entities under the ADA, 28 CFR § 36.104, and/or the Florida Civil Rights Act.

23. BCYC is subject to the mandates of Title III of the ADA and/or the Florida Civil Rights Act as a place of public accommodation.

24. BCYC is open to the public for numerous events including scouting events, regattas, sailing programs for adults and youth, art shows, book signings, lectures, and other events.

25. Non-members are regularly permitted access to BCYC facilities for these events.

26. BCYC advertises their public events and recruits for new members at public events.

27. BCYC does not exercise genuine selectivity in the admission of its members and its standards or criteria for admission are minimal. There is no cap on the number of members that may be admitted nor any criteria that must be met by prospective members.

28. Over 94% of people who apply to be members in the BCYC are admitted.

29. BCYC actively recruits and solicits new members from the general public through advertisements and social media.

30. Anyone can obtain a BCYC membership application by entering an email address.

31. BCYC does not control which members of the public are able to access membership applications nor does it restrict membership to persons invited to apply.

32. The first page of BCYC's website[2] states:

> *Located on beautiful Boca Ciega Bay in Gulfport, Boca Ciega Yacht Club (BCYC) is only four miles from the open waters of the Gulf of Mexico offering sailors easy access to west Florida's best cruising destinations as well as fabulous sailing on the protected waters of the Bay.*
> *BCYC members enjoy club cruising, racing and a full social calendar throughout the year. If you are not already a Member, we invite you to discover the many* **benefits of membership** *and join the most exciting and friendly sail club in Florida.*

33. The phrase "benefits of membership" is a hyperlink. Clicking on it takes visitors to a page[3] emphasizing BCYC's inclusiveness:

> *Everyone interested in sail boating, sailboat racing, or social activities and willing to help maintain our Club can be a member of BCYC. Contact our Membership Chairman Gerri Angel with any questions. Dues are surprisingly reasonable, and we are always ready to welcome new members.*

34. BCYC's membership fees are non-substantial.

35. BCYC charges a membership fee of $145.00 per quarter.

36. BCYC advertises on its website that membership is "*Just $1.59 per day*."

37. Any member of the public that attends BCYC's Adult Sail School program is automatically given a free, three-month membership in BCYC.

38. BCYC's purpose is primarily social.

39. BCYC advertises on its website that it is known for "throw[ing] a party or two (or ten),[4] like [its] monthly potlucks," with sailing as a backdrop to its self-described "rhumb-loving roots." *See id.*

40. BCYC's procedures for evaluating new members are informal and non-selective.

---

[2] http://www.sailbcyc.org/ Visited March 29, 2019 (emphasis in the original).
[3] http://www.sailbcyc.org/becomemember/ Visited March 29, 2019.
[4] http://www.sailbcyc.org/ Visited March 29, 2019 (emphasis in the original).

41. On December 23, 2018, RING received a written reprimand from BCYC Commodore Larry Brown for being in the clubhouse with her Service Animal. (Exhibit C.)

42. Because BCYC refused to allow RING the same access to the clubhouse as non-disabled members, even after RING provided medical verification of her disability, RING filed an administrative complaint with the Pinellas County Office of Human Rights.

43. RING also contacted BCYC's lessor, CITY OF GULFPORT, regarding the illegal disability discrimination she was experiencing on city-owned land.

44. In January of 2019 RING began experiencing retaliation by BCYC for having initiated the administrative complaint. BCYC's retaliatory conduct includes:

a) Altering the minutes of BCYC's December 2018 meeting after learning of the discrimination complaint to reflect alleged complaints BCYC claimed to have received regarding Piper. RING had never been informed of any complaints regarding Piper.

b) Fining RING $150.00 for having her service dog in the clubhouse on January 22, 2019. (01/22/2019 "Notice of Fine" is marked, attached, and incorporated herein as "Exhibit D.")

c) Targeting RING with a motion for "emergency" suspension of her membership, while refusing to inform RING of the basis for the motion. (*See generally* Commodore Angel's Emergency Motion for Suspension which is marked, attached, and incorporated herein as "Exhibit E.")

d) Suspending RING from BCYC on March 14, 2019, for reasons that were wholly pretextual. The litany of her alleged infractions includes fraudulently claiming to be a City resident to get a cheaper rate for renting a slip, stealing electricity, dumping into the Bay and talking to the City Manager of the City of Gulfport regarding the problems RING was having with access to BCYC with her service dog.

e)     Refusing to allow RING to be accompanied by her service dog at the meetings at which her suspension was discussed.

f)     Targeting RING with expulsion from the BCYC. (3/19/2019 Expulsion Target Letter is marked, attached, and incorporated herein as "Exhibit F.")

g)     Lobbying members of the BCYC to vote to expel RING.

h)     Refusing to allow RING to be accompanied by her service dog at the meeting at which her expulsion was discussed.

i)     Expelling RING from the BCYC on April 1, 2019.

45.     In this action RING seeks an injunction to protect the rights of disabled persons, including RING, to be accompanied by a service dog.

46.     All conditions precedent to this lawsuit have occurred or been performed.

47.     RING has retained the undersigned to represent her in this cause and seeks an award of all attorney's fees and costs associated with BCYC's discrimination, including but not limited to those for bringing the within matter.

## COUNT I
## FAILURE TO MAKE REASONABLE MODIFICATIONS

48.     RING re-alleges and incorporates each of the above paragraphs numbered 1 through 47 as if fully set forth herein.

49.     Pursuant to 42 USC § 12182, Title III § 302:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

50.     Among the specific prohibitions against discrimination included in the ADA is "failure to make reasonable modifications in policies, practices or procedures when such modifications

7

are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. §12182(b)(2)(A)(ii); 28 C.F.R. §36.302(a).

51. Accommodating service animals in locations where pets are prohibited is an example of the common type of modification required by the ADA.

52. BCYC is a place of public accommodation and is therefore required under the ADA to provide RING with a reasonable accommodation in order to permit her access to and use of its facilities.

53. BCYC knows of RING's disabilities and her need to be accompanied by her service dog in the clubhouse.

54. A service animal is a working animal, not a "pet."

55. BCYC's refusal to allow RING to access the BCYC clubhouse with her service dog denies RING the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of BCYC's premises, in violation of Title III, § 302 of the ADA, 42 USC § 12182.

56. BCYC's refusal to allow RING to attend BCYC's meetings (about her) with her service dog denies RING the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of BCYC's premises, in violation of Title III, § 302 of the ADA, 42 USC § 12182.

57. BCYC's targeting, fining, suspension and ultimate expulsion of RING for pretextual reasons further denies RING the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of BCYC's membership, in violation of Title III, § 302 of the ADA, 42 USC § 12182.

58. RING is being and has been subjected to discrimination on the basis of her disability, and is and has been subjected to retaliation because RING exercised her rights under the ADA by filing an administrative complaint against BCYC.

59. BCYC's discrimination against RING is intentional and willful, BCYC has refused RING full and equal access to the clubhouse having full knowledge that RING is a disabled individual and that Piper is her service dog.

60. Allowing persons with disabilities to be accompanied by service dogs in the clubhouse would not fundamentally alter BCYC's operations or impose undue administrative or financial burdens.

61. BCYC's clubhouse is occupied by a resident cat and other members have been allowed to bring pet dogs into the clubhouse without repercussions.

62. Allowing persons with disabilities to be accompanied by service dogs in the clubhouse is a feasible modification under the ADA.

63. BCYC claims that it is free to exclude service animals with impunity because it is a "private club" and therefore exempt from the ADA.

64. BCYC does not qualify for the "private club" exemption to the ADA.

**WHEREFORE**, RING requests that this honorable Court:

A. Enter judgment in her favor against the BCYC;

B. Issue a declaration stating that BCYC violated RING's rights under Title III of the Americans with Disabilities Act and that RING substantially prevailed in this lawsuit;

C. Enter an order enjoining/restraining BCYC from further acts of discrimination including, but not limited to, excluding persons with disabilities accompanied by service dogs from any portion of its premises, including the clubhouse;

D.  Enter an order placing RING in the position she would have been in had there been no violation of her rights;

E.  Award attorneys' fees and costs associated with enforcing the Americans with Disabilities Act; and

F.  Grant any other relief this Court deems appropriate.

## COUNT II
## RETALIATION

65. RING re-alleges and incorporates each of the above paragraphs numbered 1 through 47 as if fully set forth herein.

66. It is a violation of the ADA to retaliate against a person because the person filed a complaint to enforce the ADA. 42 U.S.C. §12203; 28 C.F.R. §36.206(c)(4).

67. RING filed a complaint with the Pinellas County Office of Human Rights ("PCOHR" and/or "Pinellas County") for disability discrimination specifically regarding BCYC's refusal to allow her to bring her service dog to BCYC's clubhouse.

68. After BCYC was notified by Pinellas County of RING's disability discrimination complaint, RING was immediately subject to adverse actions by BCYC including being fined, suspended, and ultimately expelled for pretextual reasons.

69. The adverse actions against RING were taken in retaliation for RING having filed an administrative complaint.

**WHEREFORE**, RING demands judgment against BCYC for attorneys' fees and costs, associated with BCYC's discrimination, including but not limited to those for bringing the within matter and associated with the administrative complaint, as well as any other such relief as this Court deems just and equitable.

10

**COUNT III**
**BCYC's DISCRIMINATION IN VIOLATION OF THE**
**FLORIDA CIVIL RIGHTS ACT**

70. RING re-alleges and incorporates each of the above paragraphs numbered 1 through 47 as if fully set forth herein.

71. Pursuant to the Florida Civil Rights Act of 1992 ("FCRA"): "All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion." Fla. Stat. § 760.08.

72. BCYC is open to the public for entertainment and educational events throughout the year. Past public events include holiday boat parades, fall and spring adult sail school, Sea Scouts events, youth sail school, an annual woman's regatta, an annual open house ("Funday"), fundraisers, a "Paint your Own Wine Glass" event, and a Celestial Navigation glass.

73. BCYC is a place of public accommodation for purposes of the FCRA.

74. An individual with a disability has the right to be accompanied by a service animal in all areas of a public accommodation that the public or customers are normally permitted to occupy. Fla. Stat. § 413.08(3).

75. BCYC was aware that RING had a disability-related need to be accompanied by her service dog, Piper.

76. Notwithstanding the fact that BCYC knew that RING is disabled and that Piper is her service dog, BCYC refused to allow RING to be accompanied by Piper in the clubhouse.

77. BCYC fined, suspended, and then expelled RING in retaliation against RING for exercising her right to be free from discrimination based upon her disabilities.

78. BCYC intentionally and willfully denied RING full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations on the basis of handicap.

79. RING is an aggrieved person pursuant to Fla. Stat. §760.02 (10).

80. As a result of BCYC's discrimination, RING suffered damages including, but not limited to, mental anguish and loss of dignity, and other intangible injuries.

81. BCYC knew that its conduct in excluding RING's service dog and fining RING for bringing her service dog into the clubhouse was illegal.

82. BCYC knew that there was a high probability that fining RING, excluding RING's service dog from the clubhouse, and expelling her from BCYC would cause RING harm.

83. On January 2, 2019, RING filed an administrative complaint with the Pinellas County Office of Human Rights ("PCOHR") regarding BCYC's refusal to allow RING to be accompanied by her service dog when in BCYC's clubhouse. The complaint was amended on April 3, 2019, after she was expelled from BCYC, to include retaliation and again on April 16, 2019, to include discrimination on the basis of sex and religion.

84. PCOHR is a fair employment practice agency. 29 CFR §1601.74(a).

85. Pursuant to Florida Statute § 760.11(1), a discrimination victim may file a complaint "with any unit of government of the state which is a fair-employment- practice agency under 29 C.F.R. ss. 1601.70-1601.80" in lieu of filing with the Florida Commission on Human Relations.

86. On May 29, 2019, PCOHR issued an investigative report finding "there is reasonable cause to believe that an unlawful act of discrimination based upon disability, retaliation and

sex has occurred." (PCOHR "Investigative Report" is marked, attached, and incorporated herein as "Exhibit G.")

87. On August 2, 2019, BCYC and RING unsuccessfully attempted "conciliation" of RING's discrimination claims.

**WHEREFORE,** RING demands judgment against the Defendant BCYC for compensatory damages, punitive damages and attorney's fees, injunctive relief, and such further relief as the Court deems just and equitable.

## COUNT IV
## THIS COURT'S POWER TO GRANT RELIEF

88. RING re-alleges and incorporates each of the above paragraphs numbered 1 through 99 as if fully set forth herein.

89. The RING has suffered and incurred irreparable damage, and continues to suffer and incur irreparable damage.

90. The Americans with Disabilities Act and Rule 65 of the Federal Rules of Civil Procedure, collectively and singularly, empower this Court to grant a temporary restraining order, preliminary injunctive and permanent injunctive relief, and/or such other relief as the Court may deem appropriate to hold and redress the violations of any provision of law enforced by the Americans with Disabilities Act. The Court, in the exercise of its equitable jurisdiction may award accommodation directives, policy modification, and restoration of access privileges to prevent and remedy any violation of any provision of law enforced by the Americans with Disabilities Act.

## PRAYER FOR RELIEF

**WHEREFORE,** RING respectfully requests that this Court:

a) Enter judgment declaring that the discriminatory practices of BCYC violate the Americans with Disabilities Act;

b) Enter judgment declaring that the discriminatory practices of BCYC violate the Florida Civil Rights Act of 1992;

c) Enter a temporary restraining order and preliminary injunction immediately and permanently enjoining and prohibiting BCYC, including but not limited to its Members, future Members, officers, staff, employees, volunteers, invitees, agents, attorneys, and representatives from blocking, preventing, precluding, prohibiting, inhibiting, and otherwise denying RING access, entry, use, transport, travel, movement, peace, and presence at BCYC -- with or without her service dog -- such actions to include immediate re-activation of the RING's membership in BCYC, dismissal of all fines against her, and unfettered access to all parts of BCYC's premises as afforded to any other member, including but not limited to its clubhouse;

d) Enter a permanent injunction enjoining and prohibiting BCYC from discriminating against any person based upon handicap/disability by refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a handicap/disability an equal right to the access and/or use of BCYC's premises;

e) Requiring BCYC to notify and distribute in writing, to each and every club member, a legal statement enumerating the rights of the disabled under the ADA and the Florida Civil Rights Act of 1992 with respect to, among other things, service animals;

e) Awarding to RING her attorney's fees and costs incurred in bringing this action to enforce the ADA and the Florida Civil Rights Act of 1992;

f) Awarding to RING her attorneys' fees and costs incurred in bringing this action to protect her right to be free from retaliation and otherwise associated with protection of her right to be free from BCYC's discrimination and retaliation, including but not limited to bringing the within matter; and

16

g)   Granting such other and further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

| | |
|---|---|
| MARCY I. LAHART, P.A. | VENZA LAW, PLLC |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| Telephone: (352) 545-7001 | office: (561) 596-6329 |
| Facsimile: (888) 400-1464 | email: dvenza@venzalawpllc.com |
| marcy@floridaanimallawyer.com | |
| | |
| BY: *s/ Marcy I. LaHart* | BY: *s/Denese Venza* |
| Marcy I. LaHart, Esq. | Denese Venza, Esq. |
| Florida Bar No. 0967009 | Florida Bar No. 599220 |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on 16th day of December, 2019 a true and correct copy of the foregoing THIRD AMENDED COMPLAINT has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: s/ *Denese Venza*
*Counsel for Plaintiff*