## LEASE

### BETWEEN
### THE CITY OF GULFPORT, FLORIDA
### AND
### BOCA CIEGA YACHT CLUB, INC.

THIS LEASE AGREEMENT is hereby made and entered into this 21ˢᵗ day of December, 2007, by and between the CITY OF GULFPORT, FLORIDA, a municipal corporation (hereinafter called "Lessor") and BOCA CIEGA YACHT CLUB, INC., a Florida not-for-profit corporation (hereinafter called "Lessee"), and the parties hereto agree to the following terms and conditions, superseding any prior lease agreement between them, concerning the property described herein:

    1.    <u>PROPERTY DESCRIPTION</u>

The Lessor does by these presents, lease and let to the Lessee the following described property, the same being situated and located in the City of Gulfport, County of Pinellas, State of Florida:

The property described in exhibit "A" attached hereto (hereinafter "Leased Premises").

    2.    <u>LEASE TERM, RENEWAL</u>

The term of this lease is for a period of thirteen (13) years, commencing on the effective date of this Lease.

    3.    <u>RENT</u>

Upon commencement of this Lease and on each yearly anniversary of the commencement date throughout the term of this Lease, and any renewal hereof, Lessee shall pay Lessor rent in the amount of One and 00/100 Dollars ($1.00) per year in advance (hereinafter "Rent"), plus sales tax, for the lease of the clubhouse building and parking area on the Leased Premises, as shown in exhibit "A" attached hereto.

    4.    <u>WET SLIPS</u>

(a)    Lessor shall provide the 56 wet slips in the basin on the Leased Premises, as shown in exhibit "A" attached hereto and made a part hereof, for exclusive use by Lessee's members, in accordance herewith.

(b)    Each of Lessee's members who desires to rent a wet slip shall execute a separate agreement with Lessor, in the form provided by Lessor, for the rental of each such individual wet slip. Said agreement shall provide for termination in the event such person ceases to be a member in good standing of Lessee's organization, upon thirty (30) days written notice thereof from Lessee to Lessor. Each individual member shall pay the rates established from time to time by Lessor for the use of such slips, at either Lessor's resident or non-resident rate for the Lessor's municipal marina, depending on the residency of said member. Except as otherwise specifically provided in this Lease, Lessee's members shall be subject to the same terms and conditions, and rules and regulations applicable to other slip lessees in Lessor's municipal marina.

(c)    February 1, 2008 and thereafter throughout the term of this Lease, wet slip rental rates for Lessee's members shall be the applicable City of Gulfport Municipal Marina Rates as

established by Lessor's City Council from time to time in its sole discretion.  These rates shall include both residential and non-residential rates.

(d)     Until the provisions of subsection (c) hereof take effect, the Wet Slip rates shall be those in effect pursuant to the prior Lease between the parties, as modified by any modifications thereof.

(e)     In the event that a wet slip within the Leased Premises is not leased by a member of Lessee's organization, Lessee shall have the first right of refusal to lease said slip in its own name, in accordance with the terms of this Section 4. This right of first refusal must be exercised by Lessee within five (5) days of the vacancy in any such wet slip, by the execution of Lessor's standard municipal slip rental agreement providing for monthly rent at the City of Gulfport resident rate in effect throughout the term of said slip rental agreement. Any wet slip on the Leased Premises which is not leased to Lessee or its members, in accordance herewith may be leased by Lessor to any person or entity, within its sole discretion, and such wet slip shall no longer be considered a part of the Leased Premises.  Lessee's members shall have the first right of refusal to enter into slip rental agreements with Lessor, as provided herein, to maintain any slip currently leased by said member in the Leased Premises.

(f)     Lessee's members shall receive a monthly discount equal to 25% of the applicable slip rent beginning February 1, 2008 and ending on September 30, 2009. This discount shall be applied by Lessor on the monthly bill and shall apply only to Lessee's members having a wet slip  as of the effective date of this Lease, and said discount shall only apply to said slip.  Lessee's members leasing a wet slip after the effective date of this Lease, who did not have an agreement for the use of said slip as of the effective date hereof shall not receive the aforesaid discount. No discounts shall apply after September 30, 2009.

(g)     Each of Lessee's members renting a wet slip shall be required to post a refundable deposit with Lessor equal to one months rent, plus a $50.00 electric deposit.  Lessor shall refund to Lessee any money deposited with Lessor by Lessee prior to the effective date of this Lease, pursuant to any prior lease between the parties.

(h)     No vessel within a wet slip shall extend more than three (3) feet into the fairway. Lessor shall maintain the wet slip docks to the same specifications as Lessor's municipal marina.

(i)     Lessee shall have the use of the 3 "non-designated/pie shaped" wet slips on the Leased Premises, including the slip on the north side of Slip "1" on "A" Dock to be used by the Sea Scouts. The location of the foregoing wet slips shall be established by Lessor in its sole discretion.

(j)     Throughout the term of the Lease, Lessee, its members and guests, shall be authorized to tie off their vessels to the pilings located at the southern ends of each dock pier serving the wet slips made available to Lessee's members pursuant to the Lease, which area is identified as "transient storage" on exhibit "A" attached hereto. Said area shall be considered part of the leased premises for all purposes. Lessee shall not charge any fee to its members or guests for the use of the transient storage area described herein.  No vessel shall be allowed to remain in the transient storage described herein for a period of more than three (3) days in any thirty (30) day period.

5.     DRY STORAGE SLIPS

(a)     Lessor shall provide the 50 dry storage slips in the basin on the Leased Premises, as shown in exhibit "B" attached hereto and made a part hereof, for exclusive use by Lessee's members, in accordance herewith.

2

CA120407 VER2.
CA/CCA121307 VER3.
CA/CC/LS121707 VER4.

(b)     Each of Lessee's members who desires to rent a dry storage slip shall execute a separate agreement with Lessor, in the form provided by Lessor, for the rental of each such individual slip.  Said agreement shall provide for termination in the event such person ceases to be a member in good standing of Lessee's organization, upon thirty (30) days written notice thereof from Lessee to Lessor,  Each individual member shall pay the rates established from time to time by Lessor for the use of such slips, at either Lessor's resident or non-resident rate for the Lessor's municipal marina, depending on the residency of said member. Except as otherwise specifically provided in this Lease, Lessee's members shall be subject to the same terms and conditions, and rules and regulations applicable to other slip lessees in Lessor's municipal marina.

(c)     The use of the dry storage slips shall include a place for the boats stored there to tie up when they are in the water.  Lessee's members shall continue to have the exclusive use of the launching ramp club currently used to launch the dry storage slip boats. Lessee may, at its option, rebuild said ramp at its expense.  Lessor shall have no responsibility for the launching ramp. Lessee's visitors and guests shall be required to use the Gulfport Marina launch ramp, transient docks, and mooring field, except for regattas, which shall be coordinated with Lessor's harbormaster.

(d)     Use of the dry storage slips shall not include any designated parking spaces around the perimeter of the clubhouse on the Leased Premises. All income from Lessee's dry storage slip rental shall be paid to Lessor.  Lessor shall reserve an area equivalent to seven (7) dry storage slips for use by Lessee at no charge.

(e)     Effective February 1, 2008 and thereafter throughout the term of this Lease, the dry storage slip rental rates for Lessee's members shall be the applicable City of Gulfport Municipal Marina Rates as established by Lessor's City Council from time to time in its sole discretion.  These rates shall include both residential and non-residential rates, as determined by the residency of the person renting the same.

(f)     Lessee's members shall receive a monthly discount equal to 25% of the applicable dry storage slip rent beginning February 1, 2008 and ending on September 30, 2009. This discount shall be applied by Lessor on the monthly bill and shall apply only to Lessee's members having a dry storage slip as of the effective date of this Lease, and said discount shall only apply to said slip.  Lessee's members leasing a dry storage slip after the effective date of this Lease, who did not have an agreement for the use of said slip as of the effective date hereof shall not receive the aforesaid discount. No discounts shall apply after September 30, 2009.

(g)     In the event that a dry storage slip within the Leased Premises is not leased by a member of Lessee's organization, Lessee shall have the first right of refusal to lease said slip in its own name, in accordance with the terms of this Section 5. This right of first refusal must be exercised by Lessee within five (5) days of the vacancy in any such dry storage slip, by the execution of Lessor's standard municipal slip rental agreement providing for monthly rent at the City of Gulfport resident rate in effect throughout the term of said slip rental agreement. Any dry storage slip on the Leased Premises which is not leased to Lessee or its members, in accordance herewith may be leased by Lessor to any person or entity, within its sole discretion, and such dry storage slip shall no longer be considered a part of the Leased Premises. Lessee's members shall have the first right of refusal to enter into slip rental agreements with Lessor, as provided herein, to maintain any dry storage slip currently leased by said member in the Leased Premises.

(h)     Lessor shall establish standards from time to time that all users of the dry storage slips shall be required to follow. Each dry storage slip renter shall abide by standards set forth within Lessor's established rental agreement and requirements, which may be modified from time to time by Lessor in its sole discretion. No maintenance or work that would normally and customarily be done in a boat yard shall be allowed in the dry storage area at any time. All boats stored in the dry storage slips shall be kept in operational condition. Lessor shall establish a separation between the dry storage slips used by Lessee and

3

CA120407 VER2.
CA/CCA121307 VER3.
CA/CC/LS121707 VER4.

the dry storage slips used by Lessor, to the extent practical in its sole discretion. The existing parking lot immediately West and South of the clubhouse on the Leased Premises may be re-paved at Lessee's expense.  Lessor shall have no responsibility for the designated parking lot area adjacent to the clubhouse on the Leased Premises.

  (i)  Lessee shall have the right to "temporarily" use any vacant dry slips for visiting regatta boats. Lessee shall the right to host Regattas and other nautical events, so long as the same are coordinated with Lessor's harbormaster.

  6.  <u>NOT FOR PROFIT STATUS</u>

  Lessee shall maintain its not-for-profit status as a not-for-profit Florida corporation and a tax exempt organization throughout the term of this Lease.  From time to time, as requested by Lessor, Lessee shall provide documentation to establish the foregoing, as well as the not-for-profit status of Gulfport Youth Sailing, Inc.

  7.  <u>BEACH ACCESS</u>

  Throughout the term of the Lease, Lessee shall allow members of the Gulfport Lions Club, Gulfport Yacht Club, Inc., Gulfport Youth Sailing, Inc., the Sea Scouts and Lessor's authorized invitees and their guests access to the beach area located behind the Lions Club clubhouse.  Lessee, Gulfport Youth Sailing, Inc. and the Sea Scouts shall be able to keep Prams, Sunfish, Dinghies and storage sheds along the beach area, as long as access to the breakwater is kept open.  Lessee shall have the right to construct a Pram storage shed no larger than 20 feet by 40 feet near the existing storage sheds, in a location determined by Lessee in its sole discretion, so long as the same is properly permitted and meets all codes and ordinances of Lessor.  The aforesaid Pram storage shed is intended to allow Lessee to store its Prams, and Sunfish boats and other items inside, to replace the existing two (2) sheds in this same area.

  8.  <u>EXPENSES</u>

  Lessee shall pay all utility charges, real estate taxes, license or permit fees, and any other fee, cost or tax, including sales tax, if any, imposed by any political entity, division or agency of the United States of America, the State of Florida or Lessor, applicable to any portion of the Leased Premises.  Lessee shall pay the applicable sales tax on all lease payments, which shall be in addition to the rent otherwise provided hereunder, unless Lessee provides Lessor with all proper documentation and verification for an exemption from said taxes.

  9.  <u>USE, ASSIGNMENT, SUB-LETTING</u>

  Lessee shall use the subject premises only for a meeting place, recreational purposes, vessel docking and storage, watercraft events and business office, for Lessee's members, only.  Lessee may make no other use of the premises without the written consent of Lessor.  Lessee shall not assign its rights or responsibilities under this lease, nor sublet or allow another to use the subject property, without the written consent of the Lessor.  Lessee shall not use the subject premises so as to constitute a nuisance.  Lessee and its members shall not allow any person to live aboard any vessel docked or anchored within the subject premises or any surrounding waters; provided however, that one (1) vessel docked at the leased premises may be designated and used as a live aboard vessel for security purposes, so long as appropriate facilities are provided for the sanitary use of the surrounding waters, no dumping of any kind is allowed or permitted, and such use is not prohibited under any law or regulation of any governmental entity, including Lessor.  The boat ramp leased pursuant hereto shall be for the exclusive use of Lessee's members and guests, and Lessee shall not allow use of the boat ramp by the general public, whether for a fee or not.

CA120407 VER2.
CA/CCA121307 VER3.
CA/CC/LS121707 VER4.

10.   <u>IMPROVEMENTS</u>

Lessee shall make no improvements or alterations to the Leased Premises that would require a permit under the building code and ordinances of the City of Gulfport, without the written consent of Lessor, including but not limited to, any improvements or alterations to any building, seawall, dry storage slip or wet slip.  Any and all improvements shall be made in accordance with all applicable laws and ordinances, including those related to site plan review and building permits.  Lessee shall pay the costs for site plan review, licenses or permit fees, as applicable.  All improvements to the leased premises, including without limitation any building, seawall, dry storage slip or wet slip, are and shall be property of the Lessor, and Lessee shall not be entitled to any compensation therefor.  Upon the expiration of the lease term or termination of this Lease, Lessor shall be entitled to possession of the Leased Premises, together with any improvements or additions thereto, whether pre-existing this lease or added during the term hereof.  Lessee shall not allow any lien to be placed against the Leased Premises, and Lessor's issuance of building permits or approval of plans shall not constitute an acceptance of any contractor or laborer regarding such improvements.

11.   <u>DREDGING OF BASIN AND CHANNEL</u>

During the term of this agreement, Lessor shall not be obligated to dredge the basin or channel used by Lessee pursuant to this Lease.

12.   <u>MAINTENANCE, CONDITION OF PREMISES</u>

Lessee accepts the leased premises as is, and is satisfied with the condition of the premises.  Lessee shall maintain the premises, including without limitation any building, parking area, beach area, all equipment or fixtures, and the surrounding waters, in a good state of repair and clean, at its expense. Lessee shall ensure that the premises, and Lessee's use thereof, is at all times in compliance with all applicable laws, ordinances, rules and regulations, including building, health and fire codes, and environmental regulations. Lessee shall observe all sanitation and other laws, ordinances, rules or regulations of the State of Florida, the United States and the City of Gulfport, concerning the operation and use of the subject property.

13.   <u>QUIET ENJOYMENT</u>

Lessor makes no covenant of quiet enjoyment for the subject property, and Lessor shall be under no obligation to Lessee to institute or defend any proceeding regarding Lessee's right to possession or quiet enjoyment of the leased premises.  Lessor shall not be responsible for rebuilding or repairing the leased premises in the event of partial or total destruction thereof, from any cause.  Lessee shall have the option of rebuilding or repairing the Leased Premises at its sole expense, using any insurance proceeds obtained for such purposes, in accordance with and subject to the provisions of Section 10 hereof.  Lessee shall provide access to the leased premises to Lessor at any time, for any reason.

14.   <u>INSURANCE</u>

Lessee shall maintain liability insurance on the Leased Premises with limits of not less than ONE HUNDRED THOUSAND and 00/100 DOLLARS ($100,000.00) per person and THREE HUNDRED THOUSAND and 00/100 DOLLARS ($300,000.00) per occurrence, with a deductible no greater than $1,000.00.  Such insurance shall include coverage for the consumption or possession of alcoholic beverages on the subject premises, consistent with Lessee's use thereof.  Lessee shall maintain fire and casualty insurance on the buildings and other improvements for the full value thereof, as determined from time to time by Lessor.  Lessee shall maintain flood insurance for the subject premises.  On each of the aforesaid

CA120407 VER2.
CA/CCA121307 VER3.
CA/CC/LS121707 VER4.

insurance policies, Lessor shall be designated as a co-insured. Lessee shall provide Lessor with proof of insurance, satisfactory to Lessor and providing that no insurance policy shall be cancelable without thirty (30) days written notice to Lessor.

15.     ALCOHOLIC BEVERAGES, CONCESSIONS

Lessee shall not allow the sale, distribution or possession of alcoholic beverages of any type on the leased premises, to anyone other than members of Lessee's organization and their guests. Lessee shall not sell or distribute any goods or merchandise to the general public in competition with items sold by Lessor at the City Marina. Lessee shall obtain all required licenses for Lessee's use of the subject premises, including the sale or distribution of alcoholic beverages, as required by law. In the event Lessee obtains the proper licenses to dispense alcoholic beverages as a private club, the sale or consumption of such beverages shall not be available to the general public and the same shall be limited to Lessee's members and their guests.

16.     TERMINATION

(a)     If Lessee loses its status as a Florida not-for-profit corporation, Lessor may terminate this lease; Lessor shall provide notice to Lessee of any grounds for termination, and this Lease shall not be terminated if such default is cured by Lessee within ninety (90) days of such notice. If Lessee defaults in the performance of the terms of this agreement, Lessor may terminate this lease and immediately re-enter the Leased Premises without notice. This lease shall be terminated if Lessee abandons or vacates the subject premises. Notwithstanding the termination of this lease for any reason, Lessor shall have the right to maintain an action against Lessee for possession or damages, or both, including unpaid rent, following Lessee's default in the performance of the terms of this lease.

(b)     If the leased premises are totally destroyed by fire or other casualty, Lessor or Lessee shall have the option of rebuilding the subject premises or terminating this Lease.

17.     INDEMNIFICATION

Lessee shall indemnify and hold Lessor harmless from all claims, demands, suits, actions or losses, including the costs, expenses and attorneys fees, through all appellate and bankruptcy proceedings, incurred by Lessor in defending against any such claims, arising or alleged to arise from any act, omission or use of the premises by Lessee or Lessee's agents, employees or contractors, or arising from any injury to the person or property of anyone on the leased premises during the term of this lease.

18.     RADON GAS

Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. Lessee shall hold Lessor harmless against any claim for damages resulting from exposure to radon gas on the leased premised, whether said claim is made by Lessee, its agents, employees, invitees, licensees or any other third party.

19.     NOTICES

Any notices provided hereunder shall be mailed by certified U.S. mail, return receipt requested, and shall be effective upon deposit into the mail. Notices to Lessor shall be delivered to City Manager, City of Gulfport, 2401 - 53rd Street South, Gulfport, Florida 33707, and notices to Lessee shall be delivered to Boca

CA120407 VER2.
CA/CCA121307 VER3.
CA/CC/LS121707 VER4.

Ciega Yacht Club, Inc. at 4600 Tifton Drive South, Gulfport, Florida 33711.

20.   ATTORNEYS FEES

In any action brought to enforce the terms of this lease or to recover possession of the Leased Premises, the prevailing party shall be entitled to recover reasonable attorneys fees, through all appellate and bankruptcy proceedings.

21.   ENTIRE AGREEMENT

This agreement constitutes the entire agreement between the parties, and all prior representations are merged herein and shall not be binding upon the parties. This agreement may only be modified in writing, approved by the City Council of the City of Gulfport and a representative of Lessee.

22.   MISCELLANEOUS

The headings used herein are for convenience only and shall not be considered in interpreting this agreement. Lessor's failure to act upon any default shall not constitute a waiver of Lessor's right to act upon that default or any other default hereunder. If any portion of this lease is declared to be invalid, the remaining portions thereof shall remain in full force and effect. By executing this Lease on behalf of Lessee, the undersigned acknowledges that he or she has full authority to bind Lessee and its members to the terms hereof. Upon execution, Lessee shall provide Lessor with a written corporate resolution authorizing the execution of this Lease. Lessee shall furnish Lessor a list of all officers, directors and members of its organization, and shall maintain on file with Lessor a complete up to date copy of Lessee's articles of incorporation and bylaws.

IN WITNESS WHEREOF, the Lessor and Lessee affix their hands and seals, by and through their respective authorized agents, on the day, month and year first above written.

ATTEST:                                  CITY OF GULFPORT, FLORIDA
                                         A Municipal Corporation

_____      BY:_____
Donna Spano, City Clerk              Thomas Brobeil, as City Manager

Approved as to form:

_____
Timothy P. Driscoll
City Attorney

WITNESSES:                              BOCA CIEGA YACHT CLUB, INC.
_____      BY:_____

_____      _____
As to Boca Ciega Yacht Club,Inc.         Name, Title (printed)

7            CA120407 VER2.
             CA/CCA121307 VER3.
             CA/CC/LS121707 VER4.

EXHIBIT "A"

parcel of land lying in the Southeast 1/4 of Section 33, Township 31 South, Range 16 East and in the Southwest 1/4 of Section 34, Township 31 South, Range 16 East, located in the City of Gulfport, Pinellas County, Florida, and being more particularly described as follows:

Commence at the Northeast Corner of the Southeast 1/4 of said Section 33; thence S 00d 01'05" W, 679.16 feet, to the Point Of Beginning; thence S 80d 42'24" E, 158.68 feet to a non-tangent point of intersection with a curve; thence 271.02 feet, along the arc of a curve to the right, said curve having a radius of 940.75 feet, a central angle of 16d 30'24" and a chord which bears S 13d 22'00" W, 270.09 feet to a point of intersection with a radial line; thence N 68d 22'48" W, along said line, 5.09 feet to a point of curvature; thence 36.66 feet along the arc of a curve to the left, said curve having a radius of 25.00 feet, a central angle of 84d 01'27" and a chord which bears S 69d 36'29" W, 33.46 feet to the point of tangency; thence S 27d 35'45" W, 64.36 feet; thence S 33d 58'56" W, 135.44 feet; thence N 17d 28'09" W, 31.47 feet; thence N 30d 51'56" E, 194.94 feet; thence N 59d 58'35" W, 87.75 feet; thence N 73d 06'13" W, 149.53 feet; thence N 78d 05'24" W, 166.54 feet; thence S 25d 22'48" W, 106.68 feet; thence S 01d 28'29" W, 31.31 feet; thence S 43d 23'30" E, 63.04 feet; thence S 51d 22'00" E, 190.30 feet; thence S 56d 32'50" E, 114.17 feet to a point of curvature; thence 33.80 feet along the arc of a curve to the right, said curve having a radius of 20.00 feet, a central angle of 96d 49'02" and a chord which bears S 08d 08'19" E, 29.92 feet to a point of tangency; thence S 40d 16'12' W, 28.63 feet to a point of intersection with the Pinellas ounty Bulkhead Line, as recorded in Bulkhead Lines Plat Book 1, Pages 23 and 24, Public Records of Pinellas County, Florida; thence N 49d 43'48" W, along said line, 522.10 feet; thence N 00d 04'05" E, 113.97 feet, to a point of intersection with the Westerly extension of the Southerly boundary of the proposed Lions Club Lease Parcel; thence N 89d 26'45" E, along said boundary, 97.47 feet; thence N 00d 33'15" W, along the Easterly boundary of said Parcel, 170.57 feet; thence S 80d 42'24" E, 420.41 feet, to the Point Of Beginning.

EXHIBIT "B"

Parcel "A"

A parcel of land lying in the Southeast 1/4 of Section 33, Township 31 South, Range 16 East, located in the City of Gulfport, Pinellas County, Florida, and being more particularly described as follows:

Commence at the Northeast Corner of the Southeast 1/4 of said Section 33; thence S 00d 01'05" W, 679.16 feet; thence N80d 42'24" W, 356.25 feet; thence S 00d 29'00"E, 25.36 feet to the Point Of Beginning; thence continue S 00d 29'00" E, 166.26 feet; thence S 37d 43'07" E, 18.06 feet; thence S 25d 22'48" W, 106.68 feet; thence S 01d 28'29" W, 31.31 feet; thence S 43d 23'30" E, 63.04 feet; thence S 51d 22'00" E, 190.30 feet; thence S 56d 32'50" E, 114.17 feet to a point of curvature; thence 33.80 feet along the arc of a curve to the right, said curve having a radius of 20.00 feet, a central angle of 96d 49'02" and a chord which bears S 08d 08'19" E, 29.92 feet to a point of tangency; thence S 40d 16'12" W, 28.63 feet to a point of intersection with the Pinellas County bulkhead line, as recorded in Bulkhead Lines Plat Book 1, Pages 23 and 24, Public Records of Pinellas County, Florida; thence N 49d 43'48" W, along said line, 522.10 feet; thence N 00d 04'05" E, 113.97 feet; thence N 89d 26'45" E, 97.47 feet; thence N 00d 33'15" W, 145.20 feet; thence S 80d 42'24" E, 64.14 feet to the Point of Beginning.

Parcel "B"

A parcel of land lying in the Southeast 1/4 of Section 33, Township 31 South, Range 16 East and in the Southwest 1/4 of Section 34, Township 31 South, Range 16 East, located in the City of Gulfport, Pinellas County, Florida, and being more particularly described as follows:

Commence at the Northeast Corner of the Southeast 1/4 of said Section 33; thence S 00d 01'05" W, 679.16 feet; thence S 80d 42'24" E, 7.26 feet to the Point of Beginning; thence continue S 80d 42'24" E, 151.42 feet to a non-tangent point of intersection with a curve; thence 271.02 feet, along the arc of a curve to the right, said curve having a radius of 940.75 feet, a central angle of 16d 30'24" and a chord which bears S 13d 22'00" W, 270.09 feet to a point of intersection with a radial line; thence N 68d 22'48" W, along said line, 5.09 feet to a point of curvature; thence 36.66 feet along the arc of a curve to the left, said curve having a radius of 25.00 feet, a central angle of 84d 01'27" and a chord which bears S 69d 36'29" W, 33.46 feet to the point of tangency; thence S 27d 35'45" W, 64.36 feet; thence S 33d 58'56" W, 135.44 feet; thence N 17d 28'09" W, 31.47 feet; thence N 30d 51'56" E, 194.94 feet; thence N 59d 58'35" W, 87.75 feet; thence N 10d 05'18" E, 228.56 feet to the Point of Beginning.

