Motion to Suspend Ms. Samantha Ring, AKA Samantha Aviva Ring, Samantha Aviva Rosario, & Samantha Aviva Wohlers

I move that we suspend Ms. Ring immediately due to her fraud on the City, which conduct is likely to endanger the welfare of BCYC by negatively impacting Boca Ciega Yacht Club's (BCYC's) efforts to negotiate a favorable lease with the City of Gulfport, thereby jeopardizing BCYC's future existence.

Anthony Angel

Anthony B. Angel

Board Member BCYC

IN SUPPORT OF THE MOTION:

Background

Boca Ciega Yacht Club's lease with the City of Gulfport (hereinafter Lease) for the Club's current City-owned premises at 4600 Tifton Drive South, Gulfport, FL, will expire in less than two years. Club representatives have been trying to start negotiations for a new lease, but the City has declined to engage with the Club despite our repeated requests to do so. City officials are aware of the Club's recent efforts to demonstrate good stewardship of the property and of the Club's attempts to abide by the terms of the current lease.

BCYC's By-laws provide, at Section 3.02 (m), that the BCYC Board will enforce all provisions in the Lease. One paragraph of BCYC's lease prohibits club members from living aboard their boats in the marina or in Gulfport's surrounding waters. (See Lease, Paragraph 9) With the City's installation of a new mooring field, at significant expense, the issue of boaters living on their vessels has become of heightened interest to the City. The Lease also requires boat owners to abide by the City of Gulfport Municipal Marina Rules and Regulations [Lease, Paragraph 4 (b)], one of which requires boats berthed therein to be seaworthy and capable of moving under their own power. (See Marina Rule 5) Another of those rules prohibits discharging of raw sewage while berthed in the marina (Marina Rule 12) which coincides with Federal and State law prohibiting such discharge anywhere inside the three-mile limit.

The City of Gulfport charges two different rates for renting boat slips in its marina; the same rates apply to boat slips in BCYC's basin. [Lease, Paragraph 4 (c)] Under that system, residents who live in the City of Gulfport are charged approximately 30% less for a boat slip than non-residents are charged. Electricity is charged separately through the City pedestals at each slip. Meters are read monthly and the charges are added to the monthly slip fees.

Particulars

Ms. Samantha Ring has lived for three (3) years in Gulfport waters as a non-sanctioned "liveaboard" despite the provision in BCYC's lease with the City prohibiting such liveaboards. During that time, she has provided the Club and the City with four false addresses as her land-based residence. She has claimed her residence as a mailbox in the UPS store at 6800 Gulfport Boulevard S. During a five-month period in 2018, she claimed to be living at 5021 23d Avenue, in Gulfport, so she could qualify as a Gulfport resident for the City's reduced slip rate for her boat in the BCYC basin. An investigator concluded that she slept there only once per week and that none of her neighbors could identify either her or her car. She did not renew that lease in January, 2019, and a different person, male, lives there now.

Instead, Ms. Ring has given the Club the Gulfport address of another Club member as her residence, despite the actual homeowner's statement that Ms. Ring does not live there and never has.

Ms. Ring has also been stealing City electricity by keeping an extension cord plugged into the City's 110v electrical outlet on the pedestal near her boat in the Club basin. This is in addition to the 30-amp shore power for which slip lessees are billed on a monthly basis. The 110v power is un-metered and provided by the City solely as a convenience to be used on a very temporary basis when household current is needed for minor repairs and the like. As Ms. Ring is well aware, the City strongly objects to boat owners using that electrical power on a constant or ongoing basis.

Conclusion

Ms. Samantha Ring is well-known to City officials. They have long suspected that Ms. Ring is living on her boats, despite the prohibitions against that, and they have also suspected that Ms. Ring's supposed land-based addresses have been fraudulent. We believe the City has stalled the start of the Club's lease negotiations awaiting the Club's actions to comply with its obligations under the current Lease. Regardless, it is clear that Ms. Ring has in the past violated a number of lease provisions and rules, and she continues to do so. Her actions have jeopardized the likelihood that the Club will be able to secure favorable terms in a new lease, without which the Club's future survival is extremely uncertain. For this reason, I believe Ms. Ring's conduct is likely to endanger the welfare of BCYC, and therefore, it is necessary to suspend Ms. Ring from the Club immediately.