**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SAMANTHA RING,**

      **Plaintiff,**

**v.**                     **Case No.: 8:19-cv-00772-VMC-JSS**

**BOCA CIEGA YACHT CLUB, INC.,**

      **Defendant.**

_____/

**DEFENDANT'S DAUBERT MOTION TO EXCLUDE TESTIMONY FROM**
**PLAINTIFF'S EXPERTS, ANDRES SANTAYANA, M.D. AND DAWN SCHEU**

In accordance with Local Rule 3.01 and this Court's Second Amended Case Management and Scheduling Order entered on December 4, 2019 [Dkt. 87], Defendant, Boca Ciega Yacht Club, Inc. ("BCYC" or "Defendant"), respectfully moves this Court to exclude Plaintiff's, Samantha Ring ("Ms. Ring" or "Plaintiff"), designated experts as follows:

1. Plaintiff designated Andres Santayana, M.D. and Dawn Scheu, dog trainer, in the expert disclosure portion of its Amended Rule 26(a)(2(A) Disclosures.[1] Dr. Santayana and Ms. Scheu are required to prepare an expert report under Federal Rule of Civil Procedure 26(a)(2)(B), which they failed to do.

2. Even if this Court finds that Dr. Santayana or Ms. Scheu were not required to prepare an expert report, Plaintiff's expert disclosures are wholly insufficient under Federal Rule of Civil Procedure 26(a)(2)(C).

3. The opinions of Dr. Santayana and Ms. Scheu are also unreliable under the admissibility standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

---

[1] Plaintiff's Amended Rule 26(a)(2)(A) Disclosures are filed with this Motion as Exhibit A.

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

## A. BACKGROUND

Plaintiff was a former member of Defendant, which is a private yacht or sail club located in Gulfport, Florida.  The club is a non-profit organization that exists through the efforts of volunteers who are members of the club and enjoy sailing.  The club was established in 1965.

Plaintiff's membership was from 2007-2019.  On April 19, 2019, the Defendant's general membership voted overwhelmingly (almost 70%) to expel Ms. Ring as a member of their private club based on the following: she continued to live on her boat despite multiple warnings and demands not to do so as it violated Defendant's Bylaws and lease to live on a boat at the slip; she provided the club false local land-based addresses that enabled her to get a discounted rate for her boat slip which is reserved only for local residents; she used electricity outlets for her boat without permission of the City of Gulfport; and her actions caused discord among club members depriving them their right to fully enjoy their membership at the private club and causing the club problems with the City of Gulfport.

Ms. Ring brought the instant lawsuit against Defendant alleging failure to make accommodations under the Americans with Disabilities Act ("ADA"), retaliation under the ADA and discrimination under the Florida Civil Rights Act ("FCRA"). The allegations are related to claims that Defendant discriminated and retaliated against her in 2018 and 2019, relating to her alleged disabilities and her service animal, a dog named Piper.[2]

---

[2] Third Amended Complaint filed on December 16, 2019. [Dkt. 100].

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

## B.  TESTIMONY OF ANDRES SANTAYANA, M.D., ON DECEMBER 4, 2019

Plaintiff states in her Amended Rule 26(a)(2(A) Disclosures that Dr. Santayana will testify about Plaintiff's mental health and anaphylactic allergies and severe anxiety; limitation on major life activities; how the service dog, Piper, helps her conditions; that his professional opinion is that Piper assists with coping with her anxiety; and Plaintiff's use of an Epi-pen during an incident on November 2019.   Based on his deposition testimony below, Dr. Santayana's testimony about the topics outlined in the expert disclosures should be excluded.

1.  As of the date of his deposition, December 4, 2019, Dr. Santayana is in his third year of residency, in family medicine, for Bayfront Health. (Santayana Depo. p. 6, lines 13-20).[3]  He graduated from USF Medical School in 2017. (Santayana Depo., p. 7, lines 12-17).  He completed the USMLE board exam, and at least one year of residency, so he is licensed to practice medicine in Florida.  (Santayana Depo. p.7, lines 23-25, p. 8, 1-12).  As a medical resident, he has not practiced medicine outside of the residency setting. (Santayana Depo. p. 16, lines 7-23).  He has never had any training on how to conduct a functional assessment limitation on an individual.  (Santayana Depo., p. 10, lines 9-12).

2.  Dr. Santayana met Plaintiff for the first time on July 16, 2018, when she requested a note supporting the use of a service animal.  (Santayana Depo., p. 20, lines 4-16, p. 34, lines 10-15).  He does not recall if she disclosed to him when the last time was that she was exposed to any allergens, or items she was allergic to.  (Santayana Depo., p. 21,

---

[3] Cited pages of Dr. Santayana's deposition testimony are submitted as Exhibit B to this Motion.

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD -  SUITE 400  -  TAMPA, FLORIDA 33607  -  (813) 289-9300  -  (813) 286-2900 FAX

lines 4-8).  He does not remember ever speaking to Plaintiff's primary care physician. (Santayana Depo., p. 24, lines 4-7).

3. On Plaintiff's first visit with Dr. Santayana on July 16, 2018, he signed a note for Plaintiff as a medical resident, which says in part that he supports "Samantha's decision to have her service animal accompany her at all times."  (Santayana Depo., p. 34, lines 10-15, and Exhibit 3 to Santayana Depo.).

4. Plaintiff asked Dr. Santayana to write the note and provided him specific direction about what to put in the note about the service animal.  (Santayana Depo., p. 35, lines 17-25).

5. Dr. Santayana testified that his note stating that he supports her decision to have her service animal accompany her at all times is not a medical prescription. (Santayana Depo., p. 40, 11-13).

6. Dr. Santayana does not know the difference between a therapy animal and a service animal. (Santayana Depo., p. 36, lines 1-5).

7. Dr. Santayana does not recall any major life activities that Plaintiff has trouble doing. (Santayana Depo, p. 39, 17-24).

8. At the time of his deposition on December 4, 2019, Dr. Santayana did not know that Ms. Ring did not bring her dog with her to work as a full-time teacher. (Santayana, Depo. p. 40, lines 5-10).

9. Dr. Santayana does not recall how her dog mitigated her anxiety. (Santayana Depo., p. 40, lines 15-22).

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

10. Dr. Santayana does not recall discussing this note with any of the actual teaching physicians at his residency clinic, and he does not recall any of them talking to him about the note. (Santayana Depo., p. 41, lines 1-14).

11. When asked if Ms. Ring is a person with a disability, Dr. Santayana testified "I don't know if I can answer that accurately." (Santayana Depo., p. 41, lines 16-19).

12. Dr. Santayana is not aware of any limitations Ms. Ring has on her ability to work. (Santayana Depo., p. 42, lines 17-19).

13. The nurse at Dr. Santayana's residency clinic who did the intake on Ms. Ring did not note any limitations on any major life activities such as bathing, dressing, walking, climbing stairs, concentrating, thinking, hearing, remembering, making decisions, doing errands alone. (Santayana Depo. p. 21, lines 16-25, p. 22, lines 1-6, p. 43, lines 19-25).

14. On March 13, 2019, Ms. Ring called the clinic by phone to ask for a new note with some change to the original note.  Dr. Santayana did not actually see her that day. He did sign a new note, once again as a medical resident. Nobody else co-signed it with him.  (Santayana Depo., p. 53, lines 16-20, p. 55, lines 12-25, Exhibit 8 to Santayana deposition).

15. Ms. Ring asked him to change the note because she told him that it needed to have more specific verbiage (Santayana Depo, p. 53, line 25, p. 54, line 2, p.55, lines12-25). The main change to the new note was that it included language regarding limited abilities due to anxiety and allergies.  (Santayana Depo., p. 54, lines 13-22).

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD -  SUITE 400  -  TAMPA, FLORIDA 33607  -  (813) 289-9300  -  (813) 286-2900 FAX

16. Dr. Santayana is not aware of Ms. Ring having any limits on any specific activities other than her need to always be cognizant of exposure to allergens and her anxiety associated with them.  The precautions for this are to avoid exposure to the allergens. (Santayana Depo., p. 70, 2-23).

17. Dr. Santayana is not aware how her anxiety stops her from doing anything that any regular person can go out and do, and Ms. Ring never told him anything she can't do in her life.  (Santayana Depo., p. 76, lines 15-23).

## C.  TESTIMONY OF DAWN SCHEU ON JANUARY 2, 2020

Plaintiff does not give specifics in her Amended Rule 26(a)(2)(A) Disclosures ("Disclosures") about what exactly dog trainer Dawn Scheu will testify about.  Plaintiff does state in the Disclosures that Ms. Scheu has trained the team of Piper and Plaintiff since 2016; however, at her deposition on January 2, 2020, Ms. Scheu testified that her first training session with Plaintiff's dog was on April 27, 2019. (Scheu Depo., p. 5, lines 8-13).[4] This is after the relevant events in this litigation. Ms. Scheu's additional deposition testimony below also supports the exclusion of her testimony.

1. Ms. Scheu's job is to train service dogs specializing in gluten and allergens detection, and she also does task training.  (Scheu Depo., p. 5, lines 14-19).  She has been doing this for six years. (Scheu Depo., p. 6, lines 12-18).

2. The first training session with Plaintiff's dog was April 27, 2019.  (Scheu Depo., p. 5, lines 8-13).

---

[4] Cited pages of Ms. Scheu's deposition testimony are submitted as Exhibit C to this Motion.

6

3.  Ms. Scheu is located in Michigan. Ms. Scheu has never met Ms. Ring or her dog Piper in person. Her sessions are conducted remotely on a video-based platform.  (Scheu Depo. p. 1, lines 9-11, p. 9, lines 2-7).

4.  Plaintiff is training her dog Piper for sunflower detection, to detect sunflower seeds so she does not have an allergic reaction to sunflowers. (Scheu Depo., p. 7, lines 21-23, p. 36, lines 21-24).

5.  Plaintiff and Piper have not graduated from the training program yet and are still in the program.  (Scheu Depo., p. 30, lines 1-5).

6.  Piper has still not taken the gluten, allergen (odor) test for service animals.  When Piper is ready to take the test, Ms. Scheu will tell Plaintiff. (Scheu Depo., p. 22, lines 9-25, p. 32, lines 1-15).

7.  Ms. Scheu testified that dog training is an unregulated field. (Scheu Depo., p. 31, lines 20-22).

8.  Ms. Scheu has never testified in federal or state court in the capacity of a dog trainer. (Scheu Depo., p. 20, lines 19-21).

9.  Ms. Scheu is not a doctor or lawyer. She was previously a paramedic, but her certification and license expired. (Scheu Depo., p. 39, 13-18).  Despite this, her deposition is filled with her opinion testimony regarding Plaintiff's medical need for Piper, and how Piper would assist Ms. Ring's medical conditions. (Scheu Depo, p. 36, lines 1-14). Her deposition also contains her opinions on the definition of service animal under ADA, and whether Piper is permitted under the ADA. (Scheu Depo., p. 32, lines 16-18, p. 35, 18-15, p. 37, lines 20-25).

7

### D. ARGUMENT

*Standard*

"[W]hen a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and must comply with the requirements of Rule 702 and the strictures of *Daubert*." *Williams v. Mast Biosurgery USA, Inc.*, 644 F. 3d 1312, 1317-18 (11th Cir. 2011). Indeed, "the ability to answer hypothetical questions is the 'essential difference' between lay and expert testimony." *United States v. Henderson*, 409 F. 2d 1293, 1300 (11th Cir. 2005) (quotation omitted).

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme Court charged judges with ensuring that "any and all scientific testimony and evidence admitted is not only relevant, but reliable." *Id.* at 590. To conduct this evidentiary gatekeeping inquiry, the Supreme Court identified the expert's principles and methodology rather than their conclusions as the focus of the analysis, and enunciated four cornerstone factors for courts to consider:

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

a) Whether the expert's technique or theory can be tested;

b) Whether it has been subjected to peer review or publication;

c) Whether the technique has a known or potential rate of error;

d) Whether the theory has attained general acceptance in the relevant scientific community.

*Id.* at 593-94.

"Given that testifying experts offer evidence in court, the opposite side must have the opportunity to challenge the opinions of a testifying expert, including how and why the expert formed a particular opinion." *Republic of Ecuador v. Hinchee*, 741 F. 3d 1185, 1192 (11th Cir. 2013). Under Federal Rule of Civil Procedure 26, all materials considered by testifying experts in forming their opinions for trial are generally discoverable, though some protection is afforded to communications between a party's retained experts and her attorney. Fed. R. Civ. P. 26 (b)(2)(A), (b)(4)(C). This limited protection does not extend to non-retained experts who do not need to prepare expert reports under Rule 26(b)(2)(A).

### Summary of Argument

Plaintiff designated Dr. Santayana and Ms. Scheu in its expert disclosures, thus they were required to prepare expert reports under Federal Rule of Civil Procedure 26(a)(2)(B). Accordingly, this Court should exclude their expert testimony at trial under Federal Rule of Civil Procedure 37(c)(1).

Further, even if this Court accepts that Dr. Santayana and Ms. Scheu are fact witnesses and not experts, Plaintiff's Disclosures about what they will testify about are insufficient, they are not qualified or able to give the testimony about the subject matter which Plaintiff says

they will testify about, and some of their potential testimony is irrelevant, such as testimony about events taking place after the relevant allegations in this lawsuit.

"If a party fails to provide information . . . as required by [Rule(a)(2)(B)], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This Court has broad discretion in making this determination. *See United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-cv-40-T-33MAP, 2009 U.S. Dist. LEXIS 4567 (M.D. Fla. Jan. 14, 2009). The inquiry turns upon the following factors: "(1) The surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence;  and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.*

### 1) <u>Plaintiff's Expert Disclosures under Rule 26(a)(2)(C) are insufficient</u>

Federal Rule of Civil Procedure 26 (a)(2)(C), which mandates that Plaintiff provide "the subject matter on which [Dr. Santayana and Ms. Scheu] will testify, as well as a summary of the facts and opinions to which [they] are expected to testify." Fed. R. Civ. P. 26 (a)(2)(C).

Turning to Plaintiff's Expert Disclosures, Plaintiff only provided a generic summary of the topics on which Dr. Santayana and Ms. Scheu would testify and referred Defendant to their medical records. *See* Exhibit B, pp. 1-3. Under Rule 26(a)(2)(C), this is insufficient. *See, e.g., Blakely v. Safeco Ins. Co. of Ill.*, No. 6:13-cv-796-Orl-37TBS, 2014 U.S. Dist. LEXIS 36720; *Cruz v. United States*, No. 12-21518-CIV-MORENO, 2013 U.S. Dist. LEXIS 8538 at *5 (S. D. Fla. Jan. 22, 2013).

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

**2)  Excluding testimony at trial under _Daubert_**

In addition to the four factors enunciated by the Supreme Court in _Daubert_, the advisory committee notes to Federal Rule of Evidence 702 identify the five factors below as helpful in conducting the _Daubert_ gatekeeping inquiry:

(1) Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;

(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(3) Whether the expert has adequately accounted for obvious alternative explanations;

(4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702, advisory committee's note (2000 amends.).

The crux of the _Daubert_ inquiry is whether the testimonial evidence that Dr. Santayana and Ms. Scheu are expected to provide at trial is sound and reliable enough for the jury to weigh. _See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.,_ 326 F.3d 1333, 1341 (11th Cir. 2003). When "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," the expert testimony should be excluded during the _Daubert_ inquiry. _GE v. Joiner_, 522 U.S. 136, 147 (1997). Likewise, "expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." _United States v. Frazier_, 387 F.3d 1244, 1260 (11th Cir. 2004).

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 -  TAMPA, FLORIDA 33607  -  (813) 289-9300 -  (813) 286-2900 FAX

Turning to Dr. Santayana, "[he] cannot satisfy any of the Daubert factors: Plaintiff has not demonstrated that his potential opinions about the necessity of service animal or what that service animal will do are testable; he has not offered any error rate for his opinions; he has not shown any evidence that his opinions have been peer reviewed or that he used a peer-reviewed source to reach his opinions; and, finally, he has not shown the general acceptance of his opinions. Consequently, his opinions fail all four of the Daubert factors." *Bowers*, 537 F. Supp. 2d at 1354 (M.D. Ga. 2007).

Dr. Santayana's evaluation is far too vague to be helpful to the trier of fact. Indeed, "it appears from [this] record that he simply followed Plaintiff's instructions for what to put in a medical note for her service animal, and he took her word for what happened and adopted that explanation as his own opinion on causation." *Bowers*, 537 F. Supp. 2d at 1357 (M.D. Ga. 2007).

As the *Bowers* Court emphasized:

> Such vague and imprecise opinions are often excluded by trial courts and their exclusion is regularly affirmed by the Eleventh Circuit. *E.g., McDowell v. Brown*, 392 F.3d 1283, 1299, 1301 (11th Cir. 2004) (characterizing expert's testimony as "too vague" and noting that"[a] mere guess that earlier treatment would either have improved [the plaintiff's] condition or rendered it the same simply fails the tests for expert opinion"); *Frazier*, 387 F.3d at 1266 (characterizing the expert's testimony as "imprecise" and "unspecific," and noting that, in light of such imprecision, the jury "could not readily determine whether the 'expectation' [alluded to by the expert] was a virtual certainty, a strong probability, a possibility more likely than not, or perhaps even just a possibility"). Not only do such opinions lack reliability, they also fail to assist the trier of fact in any meaningful way. *See McDowell*, 392 F.3d at 1299; *Frazier*, 387 F.3d at 1266. This failure provides an additional reason for their exclusion.

*Bowers*, 537 F. Supp. 2d at 1355 (M.D. Ga. 2007) (emphasis added).

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

"Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F. 3d 1092, 1113 (11th Cir. 2005). Here, Dr. Santayana asserted an opinion without using reliable methodology or consulting any outside sources, including but not limited to failing to speak with Plaintiff's physician or citing an authority upon which his opinions rely, to ensure that it was well founded.  If he is allowed to testify at trial, jurors will simply be asked to believe what he tells them about Plaintiff and her alleged need for a service animal, in the absence of any indicia of reliability. Under *Daubert* and Federal Rule of Evidence 702, such a result cannot stand.

Additionally, as a medical resident, Dr. Santayana does not practice medicine outside of the residency independently and instead is under the supervision of teaching physicians.  His deposition testimony already conducted does not support any basis for him to opine as to the medical necessity of Plaintiff's service animal, Plaintiff's alleged disabilities and what a service animal would allegedly do to help Plaintiff.

Turning to Ms. Scheu, Plaintiff has produced no qualifications that would support her testifying at trial as an expert.  Instead, dog training is an unregulated field, according to Ms. Scheu's testimony, and she has provided no basis for her opinion testimony about: 1) legal definition of disability or service animal; 2) Plaintiff's medical conditions or need for service animal; 3) description of what the service animal can do to help those conditions of Plaintiff; 4) training necessary to become a service animal; and 5) medical diagnosis of condition for which service animal is prescribed. Additionally, the relevant events in this lawsuit all occurred before Ms. Scheu first started training Plaintiff's dog Piper on April 27, 2019, so her fact

13

witness testimony about this training is irrelevant to the issues in this case that all occurred before April 27, 2019.

### E. CONCLUSION

WHEREFORE, Defendant requests that the Court exclude the testimony of Dr. Santayana and Ms. Scheu, and grant such further relief as the Court deems appropriate.

<strong><u>LOCAL RULE 3.01(g) CERTIFICATE</u></strong>

Undersigned counsel conferred with opposing counsel for Plaintiff, and Plaintiff opposes this Motion.

**COLE, SCOTT & KISSANE, P.A.**
4301 WEST BOY SCOUT BOULEVARD - SUITE 400 - TAMPA, FLORIDA 33607 - (813) 289-9300 - (813) 286-2900 FAX

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2020, I filed a true and correct copy of the foregoing document using the ECF/CM system, which will provide notification to the following: Ms. Marcy I. LaHart, Esq., c/o Marcy I. LaHart, P.A., 207 S.E. Tuscawilla Rd., Minacopy, FL 32667, (352) 545-7001 (T), (888) 400-1464 (F), marcy@floridaanimallawyer.com; and Ms. Denese Venza, c/o Venza Law, PLLC, 931 Village Blvd., #905-322, West Palm Beach, FL 33409, (561) 596-6329 (T), dvenza@venzalawpllc.com.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Boca Ciega Yacht Club, Inc.*
4301 West Boy Scout Boulevard
Suite 400
Tampa, Florida 33607
Telephone (813) 864-9324
Facsimile (813) 286-2900
Primary e-mail: brian.rubenstein@csklegal.com
Secondary e-mail:
elisabeth.fontugne@csklegal.com
Alternate e-mails:  patricia.toney@csklegal.com
hollis.simmons@csklegal.com

By:  /s/ BRIAN D. RUBENSTEIN
      BRIAN RUBENSTEIN
      Florida Bar No.: 16997
      ELISABETH A FONTUGNE
      Florida Bar No.:  115954